DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Lucas County Court of Common Pleas granting summary judgment in favor of appellee, Malrite Communications Group, Inc., against appellant, Elliot H. Saferin, M.D. For the following reasons, we affirm the decision of the trial court.
At all relevant times, Saferin was the president of Toledo Plastic Surgeons, Inc. ("the corporation") and was the principal shareholder, holding fifty-one percent of the shares. On March 13, 1998, Saferin was present in court and entered a plea of guilty, on behalf of the corporation, pursuant to NorthCarolina v. Alford, to one count of falsification and two counts of insurance fraud. Pursuant to the plea agreement, the eleven felony counts, including insurance fraud, falsification, attempted insurance fraud, and attempted theft, pending against Saferin personally were dismissed.
Under the direction and supervision of Grant Zalba, news director for WNOW-TV, Mike Costa, employee of appellee, covered the March 13, 1998 hearing where Saferin entered the plea. On the 6:00 p.m. news broadcast, the following was stated regarding the plea:
 "He's been in trouble with the law before. Now Toledo plastic surgeon Elliot Saferin is pleading guilty to insurance fraud. The fifty-two year old Saferin will have to pay more than $60,000 in fines after admitting to charging Blue Cross-Blue Shield for plastic surgery he never performed.
 "In 1996, a jury forced Saferin to pay three million dollars for sexually harassing two former employees."
On May 15, 1998, Saferin filed a complaint against appellee, alleging defamation and/or slander per se.
On July 20, 1998, appellee filed a motion for summary judgment asserting that Saferin's claims failed because the statements about which Saferin complained were substantially true, qualifiedly privileged, and a substantially accurate report about a court filing. After being granted extensions of time, Saferin eventually responded to appellee's motion on November 5, 1998. On May 13, 1999, the trial court granted appellee's motion for summary judgment. The trial court held that the essence of the statement made by appellee was substantially true and, therefore, dismissed Saferin's defamation action.
It is from this judgment that Saferin appeals and raises the following assignments of error:
 "ERROR NO. I THE TRIAL COURT ERRED IN RULING ON THE APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHICH WAS THEIR RESPONSE OR OTHERWISE PLEAD TO THE APPELLANT'S COMPLAINT PURSUANT TO RULE 12(A) OF THE OHIO RULES OF CIVIL PROCEDURE AND WHEN IT WAS BARRED FROM FILING AS A MATTER OF LAW BECAUSE IT WAS UNTIMELY PURSUANT TO RULE 6(B) OF THE OHIO RULES OF CIVIL PROCEDURE.
 "ERROR NO. II THE TRIAL COURT'S DECISION TO RULE ON THE APPELLEE'S MOTION FOR SUMMARY JUDGMENT PRIOR TO APPELLANT OBTAINING ANY DISCOVERY WHATSOEVER FROM THE APPELLEE WAS AN ABUSE OF DISCRETION.
 "ERROR NO. III THE TRIAL COURT'S RULING AS TO THE SUBSTANTIAL TRUTH OR FALSITY OF THE STATEMENTS MADE BY THE APPELLEE WAS AN ISSUE OF FACT WHICH SHOULD HAVE BEEN DECIDED BY A JURY; THEREFORE BEING ERRONEOUS AS A MATTER OF LAW."
Upon reviewing the trial court's decision of the parties' motions for summary judgment, we must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts.
(1989), 61 Ohio App.3d 127, 129. Accordingly, summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
Saferin asserts in his first assignment of error that appellee failed to move, answer or otherwise plead by July 15, 1998, and, instead, moved and pled by filing a motion for summary judgment on July 20, 1998. Due to this late filing, Saferin asserts that appellee failed to comply with Civ.R. 6(B)(2). Moreover, because appellee's motion for summary judgment was untimely, Saferin asserts that the motion was barred from being addressed by the court.
According to the record, on June 18, 1998, within the time period during which appellee was to respond, the parties agreed to an extension of time, until July 15, 1998, for appellee to move, answer or otherwise plead in response to Saferin's complaint. The appearance docket indicates that a second extension of time to answer complaint and discovery was granted until August 14, 1998; however, although noted on the appearance docket, it is not contained in the record. On July 20, 1998, appellee responded to Saferin's complaint by filing its motion for summary judgment. In his July 31, 1998 motion for extension of time to respond to appellee's motion for summary judgment, Saferin raised no objection to the timeliness of appellee's motion for summary judgment. In fact, Saferin never objected in the trial court that appellee's response to his complaint was untimely. Instead, after several extensions of time, Saferin responded to appellee's motion for summary judgment on November 5, 1998.
Insofar as Saferin never objected to the timeliness of appellee's response to his complaint, at a time when such error could have been avoided or corrected, we find that he has waived his right to object to this alleged error on appeal.[1] SeeGoldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121. Accordingly, we find appellant's first assignment of error not well-taken.
Saferin argues in his second assignment of error that the trial court abused its discretion in ruling on appellee's motion for summary judgment before Saferin was able to conduct discovery. We disagree.
On July 31, 1998, Saferin requested an extension of time, until November 3, 1998, to respond to appellee's motion and conduct discovery. Appellee opposed Saferin's request for additional time to respond to its motion for summary judgment and filed a request for protective order to stay any discovery until after the trial court ruled on the legal issues presented in appellee's motion. Appellee's motion to stay discovery was denied and Saferin was granted an extension of time until October 5, 1998 to respond to appellee's motion. Saferin was subsequently granted a final extension of time until November 5, 1998 to respond to appellee's motion for summary judgment.
On November 5, 1998, Saferin filed his memorandum in opposition to appellee's motion for summary judgment. Appellee then filed a reply brief on November 17, 1998. The trial court entered its judgment granting appellee's motion for summary judgment and dismissing Saferin's complaint on May 13, 1999.
At no time did Saferin file notices of deposition, motions for further extensions of time, or motions to compel appellee to respond to discovery requests. Accordingly, we find that the trial court did not abuse its discretion in ruling on appellee's decisional summary judgment motion. Saferin's second assignment of error is therefore found not well-taken.
In his third assignment of error, Saferin argues that the trial court erred in granting summary judgment because genuine issues of material fact existed concerning the truth or falsity of statements made by appellee. We disagree.
Summary judgment is appropriate in defamation actions because the determination of whether words are defamatory or not is a question of law to be decided by the court. Vail v. ThePlain Dealer Publishing Co. (1995), 72 Ohio St.3d 279. To survive a motion for summary judgment in a defamation action, the plaintiff must make a sufficient showing of the existence of every element essential to his or her case. The elements of a common-law defamation claim, which includes both libel and slander, are: (1) a false and defamatory statement concerning another; (2) an unprivileged publication of the statement to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Akron-Canton WasteOil, Inc. v. Safety-Kleen Oil Serv., Inc. (1992), 81 Ohio App.3d 591,601; Restatement of the Law 2d, Torts (1977) 155, Section 558. See, also, Bruss v. Vindicator Printing Co. (1996),109 Ohio App.3d 396, 399.[2]
Material falsity is an essential element of defamation.Bruss, supra at 400, citing New YorkTimes Co. v. Sullivan (1964), 376 U.S. 254. As such, in defending against a defamation action, it is sufficient for the defendant to show that "the imputation is substantially true, or as it is often put, to justify the `gist,' the `sting,' or the substantial truth of the defamation." National MedicServices Corp. v. E.W. Scripps Co. (1989), 61 Ohio App.3d 752,755, citing Prosser, Law of Torts (4 Ed. 1971) 798-799, accord Bruss, supra.
In this case, it is clear that the newscast was technically inaccurate; however, the issue is not whether the report was accurate, but whether it was substantially true. In considering what constitutes "substantially true," appellee cites to three cases that are analogous to the instant case.
In Bruss, 109 Ohio App.3d 396, the court reviewed statements contained in a newspaper report regarding nude dancers at a certain establishment. The prosecutor filed a nuisance complaint against the establishment and certain employees, including the plaintiff, alleging that certain employees "engaged in nude dancing for the purposes of `lewdness, assignation or prostitution.'" An article appeared in the local newspaper that stated, "* * * Also charged but not arrested * * *" was the plain tiff, who was "also named as [a defendant] in today's complaint." The plaintiff sued the newspaper and asserted that the article falsely implied that she had been charged with criminal conduct,i.e., prostitution. In awarding the defendant summary judgment, the Bruss court concluded that the article was substantially true because it properly reported that the prosecutor had averred that the dancers had engaged in "lewdness, assignation or prostitution." Additionally, the court concluded that the meaning of the term "charged" was not restricted to formal criminal charges, but could also mean "accused."
In Hauck v. Gannet Corp. (Mar. 20, 1998), Hamilton App. No. C-970171, unreported, the court reviewed statements in a newspaper article which inaccurately reported that a real estate developer was "bankrupt." Actually, a partnership in which the developer was a general partner had filed for bankruptcy and secured creditors had instituted foreclosure proceedings against partnership property. The developer's son, however, stated during the bankruptcy proceedings that the developer and he were insolvent. This insolvency was confirmed by the developer's federal income tax returns. Accordingly, the Hauck
court concluded that the inaccurate statements about the developer's deplorable financial state were substantially true and awarded the defendant summary judgment.
In Horvath v. The Telegraph (Mar. 8, 1982), Lake App. No. CA-8-175, unreported, the court reviewed statements in a newspaper article which stated that "George Horvath" had been accused of funneling illegal drug funds through a business called "Horvath Service." Actually, there were two George Horvaths, father and son. The son had been accused of the illegal drug activity. However, the plaintiff, father, was the owner of the business. Despite the inaccurate implication of the article, theHorvath court concluded that the "gist" or the "sting" of the article was substantially true because the reporter had been told from a couple of law enforcement officials that drug money was being funneled through the business.
In rebuttal, Saferin argues that Young v. The MorningJournal (1996), 76 Ohio St.3d 627, and Fish v.Heatherdowns Country Club Assn. (June 7, 1991), Lucas App. No. L-90-002, unreported, govern this action. We find that these cases are distinguishable and therefore inapplicable to this action.
In Young, rather than addressing the "falsity" element of a defamation claim and the substantial truth doctrine, the court discussed the privilege that arises from R.C. 2317.05, which concerns the publication of a fair and impartial report of any court document. The Young court denied summary judgment because the inaccuracies in the report raised "a question about whether the report was `substantiallyaccurate' making it impossible for reasonable minds to reach `but one conclusion.'" Young at 628. The report in this case, however, was not based on a document, but rather the March 13, 1998 plea hearing. Thus, the holding inYoung is not applicable to this case.
Fish is also inapplicable. In that case, we held that because there was conflicting testimony regarding the actual truth underlying the allegedly defamatory statements, the trier of fact would have to resolve the factual disputes before it could be determined whether the statements were defamatory. Unlike Fish, the material facts are not in dispute, all pertinent facts are stated in the transcript of the court hearing.
Despite the inaccuracies in appellee's report, we find that the report was "substantially true." Saferin alleged that he was defamed by the statements that he pled "guilty to insurance fraud" and that he would have to "pay more than $60,000 in fines after admitting to charging Blue Cross-Blue Shield for plastic surgery he never performed."
With respect to the statement, "Now Toledo plastic surgeon Elliot Saferin is pleading guilty to insurance fraud," there is no dispute that Saferin pled guilty on behalf of the corporation. However, given the fact that Saferin was the president, one of only two shareholders, the principal share holder, the surgeon who performed the acts that led to the corporation's insurance fraud, and was physically present in court entering the plea, we find that the statement is substantially true.
We next turn to the statement, "The fifty-two year old Saferin will have to pay more than $60,000 in fines after admitting to charging Blue Cross-Blue Shield for plastic surgery he never performed." At the hearing, defense counsel for both Saferin and the corporation observed that due to the corporation's present financial situation, Saferin personally would bear the burden of the resulting financial obligations, which included $11,000 for investigative costs, $22,421.82 for restitution, and $25,000 in fines, plus an undetermined amount in court costs. Additionally, the state represented that on the date of the hearing, the checks issued as part of the settlement came from an education fund, because corporate funds were frozen, and that "it remain[ed] to be seen whether or not that money [was] actually going to end up coming out of that fund or whether or not Dr. Saferin [would] actually be personally liable for this amount of any fines." Based on the foregoing, even though there were actually only $25,000 in actual fines, we find that it was substantially true that Saferin would have to pay more than $60,000 as a result of the plea agreement.
Finally, we turn to the statement that Saferin admitted to charging Blue Cross-Blue Shield for plastic surgery he never performed. It is true that Saferin never engaged in the charging-for-work-never-performed variety of insurance fraud. However, we agree with the trial court that R.C. 2913.47(B) and (C), the offense and penalty sections for insurance fraud, make no distinction between varieties of insurance fraud or penalties imposed. Hence, statutorily, no type of insurance fraud is any more egregious than any other type. We therefore find that the report's characterization of the type of insurance fraud to which Saferin pled, on behalf of the corporation, was a distinction without a difference and did not rise to the level of "falsity" required for a defamation action.
Accordingly, we find that no genuine issues of material fact exist and find that summary judgment was appropriately granted. We therefore find Saferin's third assignment of error not well-taken.
On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., James R. Sherck, J.,Richard W. Knepper, P.J., CONCUR.
[1] We are concerned by the implication on the appearance docket that Saferin agreed to a second extension of time, until August 14, 1998, to allow appellee to respond, but then raised timeliness as an issue on appeal. Unfortunately, we do not have a copy of this second agreement in the file.
[2] Bruss, supra at 399, states that, in order to establish a claim of defamation, a plaintiff must show: "(1) a false statement of fact was made concerning him or her; (2) the statement was defamatory; (3) the statement was written; (4) the statement was published; [and] (5) in publishing the statement, the defendant acted [with] the requisite degree of fault."