ONEY ET AL., APPELLEES, *v.* ALLEN ET AL.;
THE NEWS JOURNAL ET AL., APPELLANTS.

[Cite as Oney *v.* Allen (1988), 39 Ohio St. 3d 103.]

(No. 87-1643—Submitted June 7, 1988—Decided October 12, 1988.)

*Sindell, Rubenstein, Einbund, Pavlik, Novak & Celebrezze, William J. Novak* and *Laurie F. Starr,* for appellee.

*Wickens, Herzer & Panza, Richard D. Panza, Richard A. Naegele* and *Thomas A. Downie,* for appellants.

H. BROWN, J. In this case we must decide whether the publication by the News Journal of the indictment of Michael Oney was privileged pursuant to R.C. 2317.05. For the reasons which follow, we find that it was.

There is no evidence indicating that the report of the indictment was published maliciously, and the Oneys do not so contend. It is undisputed that the News Journal published a correction shortly after learning of the misidentification. The only issue before us is whether the publication was a "fair and impartial" report of the indictment pursuant to R.C. 2317.05.

R.C. 2317.05 provides in part:

"The publication of a fair and impartial report of the return of any indictment * * * is privileged, unless it is proved that the same was published maliciously, or that defendant has refused or neglected to publish in the same manner in which the publication complained of appeared, a reasonable written explanation or contradiction thereof by the plaintiff * * *."

A publication is an "impartial" report when it is unbiased, not giving the impression the writer agrees or

disagrees with the assertions in the official record or proceeding. There is no allegation that the article in this case was other than impartial. The article simply listed the names, ages, addresses and charges against those indicted. It did not indicate whether the author believed the charges in the record to be accurate.

However, the Oneys claim that the addition of information not in the indictment, *i.e.*, the age and address of Mike Oney ("* * * 32, of Noble Road, Shiloh * * *"), and the failure to include information in the indictment ("aka Stoney") renders the fair report privilege inapplicable to Hudak and the News Journal. The court of appeals agreed.

We find that the privilege given under R.C. 2317.05 to publish a fair and impartial report of the return of any indictment does not require a verbatim reproduction of the official record.

This is in accord with what appears to be the unanimous view of the case law. See Elder, The Fair Report Privilege (1988) 193, Section 1.21. Courts have accorded protection to variances from the verbatim record "as long as the 'gravamen,' 'gist' or 'sting' or 'substance' of the underlying proceeding or report * * * is substantially correct." (Footnotes omitted). *Id.*

In order to show that a publication falls within the privilege of R.C. 2317.05, the defendant must demonstrate that the publication is a substantially accurate report of the official record. See *Torski* v. *Mansfield Journal Co.* (1956), 100 Ohio App. 538, 545, 60 O.O. 413, 416, 137 N.E. 2d 679, 683.

See, also, *Wilson* v. *Birmingham Post Co.* (Ala. 1986), 482 So. 2d 1209 (interpreting a statute virtually identical in relevant part to R.C. 2317.05); *Crittendon* v. *Combined Communications Corp.* (Okla. 1985), 714 P. 2d 1026. A publication is substantially accurate if it conveys the essence of the official record to the ordinary reader, without misleading the reader by the inclusion of inaccurate extra-record information or the exclusion of relevant information in the record. See 3 Restatement of the Law 2d, Torts (1965) 300-301, Section 611, Comment *f; Mark* v. *Seattle Times* (1981), 96 Wash. 2d 473, 493, 635 P. 2d 1081, 1092.

Unfortunately, our decision in *Embers Supper Club, Inc.* v. *Scripps-Howard Broadcasting Co.* (1984), 9 Ohio St. 3d 22, 9 OBR 115, 457 N.E. 2d 1164, certiorari denied (1984), 467 U.S. 1226, has been interpreted as holding that a verbatim reproduction of the official record is required under R.C. 2317.05. In *Embers* we found that information included in a news broadcast which was not part of the official records removed the broadcast from the protection of R.C. 2317.05. The debate between the majority and dissenting justices in *Embers* was not over whether the additional words had been included, but whether the additional words rendered the broadcasts not substantially accurate. *Id.* at 27, 9 OBR at 119, 457 N.E. 2d at 1168 (Holmes, J., dissenting). Nevertheless, to the extent that the language used in *Embers, supra,* can be read in contradiction to the rules we announce today, such interpretation of *Embers* is disapproved.[2]

In the present case, the Oneys

<hr>

[2] Though the issue is not before us, the standard of proof established for private-figure defamation cases in *Embers* was modified in *Lansdowne* v. *Beacon Journal Pub. Co.* (1987), 32 Ohio St. 3d 176, 180, 512 N.E. 2d 979, 984.

claim that someone named "Stoney" was indicted, not appellee Mike Oney, and, therefore, the newspaper article was inaccurate and misleading. We disagree.

The indictment stated that "Mike Oney (aka) Stoney" was indicted for trafficking. Apparently there is no person by the name of Mike Oney with an alias of Stoney. However, the facts and circumstances which provide the context to the docketed indictment make clear that the appellee, Mike Oney, was indicted.

There was only one Mike Oney in the area. The prosecutor's office, which was in charge of the undercover investigations, specifically identified appellee Mike Oney, by name, address, age, and social security number, as the subject of the indictment. The sheriff's office called appellee at work and told him to come in. Oney went to the sheriff's office and identified himself by name, whereupon he was told he was under arrest. He then confirmed that his address and social security number were the same as those possessed by the officers. Under these facts we reject the argument that appellee was never indicted for trafficking.

It is true that Mike Oney was *mistakenly* indicted for drug trafficking, but, as the Oneys concede in their brief, the responsibility for the misidentification was substantially that of the Richland County Sheriff's Department.

In light of the fact that appellee Mike Oney was in fact indicted, it can hardly be claimed that the article's addition of Oney's age and address was inaccurate or misleading. Nor did the publisher mislead by its failure to include "aka Stoney" in its report, especially since Michael Oney claims that he was not known as "Stoney." The pivotal fact is that Michael Oney, the appellee in the present case, was indicted and that is what the publisher reported.

The Oneys also contend that the court order mandating the secrecy of the indictments renders the privilege of R.C. 2317.05 inapplicable. We disagree.

The criminal docket of the court of common pleas is a public record and it reflected that an indictment was returned for Mike Oney. It is axiomatic that a court speaks through its docket and journals. *Indus. Comm. v. Musselli* (1921), 102 Ohio St. 10, 130 N.E. 32.

By its terms, R.C. 2317.05 protects fair and impartial reporting of the return of any indictment. The facts material to our determination are not in dispute. Therefore, we find that the publication was privileged pursuant to R.C. 2317.05 and we reinstate the trial court's grant of summary judgment in favor of Hudak and the News Journal.

Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., SWEENEY, HOLMES and WRIGHT, JJ., concur.

LOCHER and DOUGLAS, JJ., separately concur in judgment.

LOCHER, J., concurring. I concur in the judgment of the majority. However, I also agree with Justice Douglas that this case presents the opportunity to overrule the erroneous decision in *Embers Supper Club, Inc.* v. *Scripps-Howard Broadcasting Co.* (1984), 9 Ohio St. 3d 22, 9 OBR 115, 457 N.E. 2d 1164, and that we should do so today.

DOUGLAS, J., concurring. While I concur in the judgment of the majority, I do not concur in the majority's fur-

ther attempt to salvage something out of *Embers Supper Club, Inc.* v. *Scripps-Howard Broadcasting Co.* (1984), 9 Ohio St. 3d 22, 9 OBR 115, 457 N.E. 2d 1164. Today this court makes a further attempt at "explaining" *Embers*. Just last year we modified *Embers* in *Lansdowne* v. *Beacon Journal Pub. Co.* (1987), 32 Ohio St. 3d 176, 512 N.E. 2d 979. This court, rather than continuing to "explain" and "modify" *Embers,* should, more appropriately, overrule the case and send it to the early demise it so richly deserves. The reasons for this become more obvious as time goes on. Well-intentioned persons rely on the case for propositions that, in the first place, should never have been promulgated. The case at bar is yet another good example. The very omnipresence of *Embers* brings about suits, and the threat of suits, like the one now before us. Such suits, and threats of suit, are time-consuming and expensive to defend. As such, they present a *sub silentio* chilling effect on those who have not only the responsibility but also the duty to report the news. The sooner this blight is eradicated, the better off all the citizens of Ohio will be.

With today's "explanation" of *Embers* and our "modification" of the case in our decision in *Lansdowne,* one can only hope that soon the explanations and modifications will swallow the rule of *Embers* and the case will be modified and explained out of existence. In the case before us, we are presented with the opportunity to overrule *Embers.* We should do so.