[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 627.]

**YOUNG, APPELLEE, *v*. THE MORNING JOURNAL ET AL., APPELLANTS.**

**[Cite as *Young v. The Morning Journal*, 1996-Ohio-355.]**

*Defamation—Newspapers—"Neutral reportage" doctrine not recognized in Ohio.*

(No. 95-1239—Submitted May 21, 1996—Decided October 9, 1996.)

APPEAL from the Court of Appeals for Lorain County, No. 94CA005952.

————————————

{¶ 1} On July 17, 1992, Judge Lynett McGough cited attorney James C. Young for contempt of court. On July 20, 1992, appellant The Morning Journal published an article which stated in pertinent part that, "Amherst attorney James Young is facing a contempt of court citation ***."

{¶ 2} Appellee, attorney James H. Young of Amherst, Ohio, filed suit against appellants, The Morning Journal and its parent company, Journal Register Company, for defamation and libel. Young alleged that his law practice had been adversely affected because clients believed he was the subject of the contempt citation. The trial court granted appellants' motion for summary judgment, finding that, as a matter of law, "the article was privileged pursuant to R.C. 2317.05." The court of appeals reversed upon finding that "the article was not a substantially accurate report of the contents of the court's records." The court also found that the "neutral reportage" privilege was inapplicable because of R.C. 2317.05, and that the issue of whether Young was a public or private figure was not properly before it.

{¶ 3} The cause is now before this court pursuant to the allowance of a discretionary appeal.

————————————

*David B. Malik, James H. Young* and *Mark W. Ruf*, for appellee.

*Wickens, Kerzer & Panza, Richard D. Panza* and *Linda C. Ashar*, for appellants.

_____

**PFEIFER, J.**

**{¶ 4}** The specific issue before us is whether the trial court properly granted summary judgment for the appellants. For the following reasons, we find that summary judgment was not properly granted.

**{¶ 5}** R.C. 2317.05 states that "[t]he publication of a fair and impartial report of *** any *** document in any criminal or civil cause in any court of competent jurisdiction, or of a fair and impartial report of the contents thereof, is privileged ***." We recently held that "in order to show that a publication falls within the privilege of R.C. 2317.05, the defendant must demonstrate that the publication is a substantially accurate report of the official record." *Oney v. Allen* (1988), 39 Ohio St.3d 103, 529 N.E.2d 471, paragraph two of the syllabus. We also held that "[a] publication is substantially accurate if it conveys the essence of the official record to the ordinary reader, without misleading the reader by the inclusion of inaccurate extra-record information or the exclusion of relevant information in the record." *Id.* at paragraph three of the syllabus.

**{¶ 6}** Civ.R. 56(C) states that "*** A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made ***." Thus, to assess whether summary judgment was properly granted we must determine whether reasonable minds, upon reviewing the facts in this case, could reach "but one conclusion" about whether the article was a "substantially accurate report." Based on the record before us, it appears that reasonable minds could reach different conclusions.

**{¶ 7}** When The Morning Journal printed that "James Young" had been cited for contempt, it excluded "relevant information," the middle initial. This exclusion *could* be considered misleading to the ordinary reader. When The Morning Journal reported that "James Young" was from Amherst, it included "inaccurate extra-record information." This inclusion *could* be considered misleading to the ordinary reader. We find that the combination of these two inaccuracies raises a question about whether the report was "substantially accurate" making it impossible for reasonable minds to reach "but one conclusion." Accordingly, we find that the grant of summary judgment based on an R.C. 2317.05 privilege was improper.[1]

**{¶ 8}** This court has never recognized the "neutral reportage" doctrine and we decline to do so at this time. Accordingly, we will not uphold the grant of summary judgment based on the "neutral reportage" doctrine.

**{¶ 9}** Finally, we look to whether Young was a public figure. We find insufficient evidence in the record on which to make such a finding. Therefore, we decline to uphold the grant of summary judgment on the grounds that Young must, and is unable to, show actual malice.

**{¶ 10}** We affirm the judgment of the court of appeals and remand the cause to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed*
*and cause remanded.*

MOYER, C.J., RESNICK, COOK and STRATTON, JJ., CONCUR.

DOUGLAS and F.E. SWEENEY, JJ., dissent.

———————————

1. This finding in no way affects our holding that R.C. 2317.05 does not require a "verbatim reproduction of the official record." *Oney*, 39 Ohio St.3d 103, 529 N.E.2d 471, paragraph one of the syllabus.

**DOUGLAS, J., dissenting.**

{¶ 11} I respectfully but vehemently dissent from the judgment and opinion of the majority because the majority has instituted a more stringent standard regarding the reporting of newsworthy events than previously established by this court. By today's decision, the majority effectively negates, I believe, the First Amendment underpinnings of R.C. 2317.05, and, unfortunately, turns what was once considered a statutory shield into a sword. Further, I also dissent because the majority has failed to recognize that the July 20, 1992 newspaper article was protected by the "neutral reportage" doctrine.

{¶ 12} The purpose of Ohio's fair and impartial reporting statute is to promote, not inhibit, the reporting of newsworthy events by the media. R.C. 2317.05 provides in part:

"The *publication of a fair and impartial report* of the return of any indictment, the issuing of any warrant, the arrest of any person accused of crime, or the filing of any affidavit, pleading, *or other document in any criminal or civil cause* in any court of competent jurisdiction, *or of a fair and impartial report of the contents thereof, is privileged*, *unless it is proved that the same was published maliciously*, *or that defendant has refused or neglected to publish in the same manner in which the publication complained of appeared, a reasonable written explanation or contradiction thereof by the plaintiff * * *.*"  (Emphasis added.)

{¶ 13} The newspaper article at issue herein unquestionably constituted a fair and impartial report of the trial court's journal entry. The majority, however, holds that appellants are not entitled to summary judgment because the article did not include James Young's middle initial and because it incorrectly stated that he was from Amherst. The majority says that such "inaccuracies" raise a question whether the article was "'substantially accurate' making it impossible for reasonable minds to reach 'but one conclusion.'" I strongly disagree.

4

**{¶ 14}** In *Oney v. Allen* (1988), 39 Ohio St.3d 103, 579 N.E.2d 471, paragraph two of the syllabus, we held that a publication is privileged pursuant to R.C. 2317.05 as long as it is a *substantially accurate* report of the official record. In *Oney*, we responded to problems created by *Embers Super Club, Inc. v. Scripps-Howard Broadcasting Co.* (1984), 9 Ohio St.3d 22, 9 OBR 115, 457 N.E.2d 1164 (see, also, *Landsdowne v. Beacon Journal Pub. Co.* [1987], 32 Ohio St.3d 176, 180, 512 N.E.2d 979, 984), and noted that the *inclusion* of additional information in a publication does not automatically destroy the privilege granted by R.C. 2317.05. *Oney*, 39 Ohio St.3d at 106, 529 N.E.2d at 474. We also held in *Oney* that R.C. 2317.05 does not require a verbatim reproduction of the official record. *Id.*, paragraph one of the syllabus.

**{¶ 15}** Thus, the fact that the July 20, 1992 article contains information other than information in the trial court's journal entry or the fact that the article did not include the attorney's middle initial does not preclude it from being privileged under R.C. 2317.05. "A publication is substantially accurate if it conveys the essence of the official record to the ordinary reader, without misleading the reader by the inclusion of inaccurate extra-record information or the exclusion of relevant information in the record." *Oney*, paragraph three of the syllabus.

**{¶ 16}** It is apparent, at least to me, that the July 20, 1992 article conveyed the essence of the trial court's entry. Granted, the article could have been more accurate by including the attorney's middle initial and stating that he was from Cleveland. However, these matters should not be considered in isolation but must be read in context with the entire article. Literal accuracy is not a prerequisite to a finding that a privilege exists. "Courts have accorded protection to variances from the verbatim record 'as long as the "gravamen," "gist" or "sting" or "substance" of the underlying proceeding or report * * * is substantially correct.'" *Oney*, 39 Ohio St.3d at 106, 529 N.E.2d at 473, citing Elder, The Fair Report Privilege (1988) 193, Section 1.21.

**{¶ 17}** The article was not misleading. It conveyed that an attorney by the name of James Young was being held in contempt for failing to appear at a pretrial hearing. The article was in all material respects fair, impartial and accurate.

**{¶ 18}** In addition, the record is void of any evidence of malice. Furthermore, The Morning Journal complied with R.C. 2317.05 when it published a reasonable retraction. Two days after learning that the attorney held in contempt was from Cleveland, The Morning Journal published a correction, which read: "Attorney James Young, who is facing a contempt of court charge before Lorain County Common Pleas Judge Lynett McGough, was incorrectly identified as being from Amherst. Young is a Cleveland attorney, according to Judge McGough's office."

**{¶ 19}** Based on the foregoing, I believe that the July 20, 1992 article was privileged pursuant to R.C. 2317.05. Accordingly, summary judgment should be granted in favor of appellants.

**{¶ 20}** As a final matter, I also disagree with the decision of the majority not to formally adopt and apply the "neutral reportage" doctrine. The majority summarily dismissed the application of this privilege, stating that "[t]his court has never recognized the 'neutral reportage' doctrine and we decline to do so at this time." The treatment of this issue (or lack thereof) by the majority leaves one with the impression that this doctrine is simply a common-law aberration worthy of little attention. However, what the majority does not reveal is that the neutral reportage privilege has been widely recognized by numerous courts in this state and other jurisdictions. See, *e.g.*, *April v. Reflector-Herald, Inc.* (1988), 46 Ohio App.3d 95, 546 N.E.2d 466; *House of Wheat v. Wright* (Oct. 10, 1985), Montgomery App. No. 8614, unreported; *J.V. Peters & Co. v. Knight Ridder Co.* (Mar. 21, 1984), Summit App. No. 11335, unreported; and *Edwards v. Natl. Audubon Soc., Inc.* (C.A. 2, 1977), 556 F.2d 113, certiorari denied (1977), 434 U.S. 1002, 98 S.Ct. 647, 54 L.Ed.2d 498.

{¶ 21} The neutral reportage privilege is grounded in First Amendment principles. *Edwards*, 556 F.2d at 120. The focus of the privilege is on the subjective good faith of the journalist making the report and the public interest or newsworthiness of the story. In *Krauss v. Champaign News Gazette, Inc.* (1978), 59 Ill. App.3d 745, 746-747, 375 N.E.2d 1362, 1363, the Illinois appellate court, relying on *Edwards*, aptly observed the rationale and justification behind the privilege and stated:

"A robust and unintimidated press is a necessary ingredient of self-government. Since the ultimate sovereign in this country is an informed citizenry, we must have information available of and about public issues and public figures upon which to make judgments as to public officials and public programs. * * * Thus, the doctrine of neutral reportage gives bent to a privilege by the terms of which the press can publish items of information relating to public issues, personalities, or programs which need not be literally accurate. If the journalist believes, reasonably and in good faith, that his story accurately conveys information asserted about a personality or a program, and such assertion is made under circumstances wherein the mere assertion is, in fact, newsworthy, then he need inquire no further. Unless it is shown that the journalist deliberately distorts these statements to launch a personal attack of his own upon the public figure or the program, that which he reports under such circumstance is privileged."

{¶ 22} In this case, the information reported in the article was obtained from the public court records, and the reporter believed, reasonably and in good faith, that the story accurately conveyed the charge outlined in the court's entry. There is absolutely nothing in the record that indicates that the reporter or The Morning Journal intended to deliberately distort what was contained in the journal entry or that they intended to launch a personal attack against appellee. The article unquestionably constituted a fair and impartial report of a judicial matter. In this regard, I also believe that appellants are entitled to summary judgment for the

additional reason that the article clearly falls within the ambit of the "neutral reportage" privilege.

{¶ 23} It is time that Ohio be included among those enlightened jurisdictions which have adopted the doctrine of neutral reportage. This court could, in the case now before us, take this next logical step in support and protection of the right of a free press to gather and report the news. I regret that the majority has missed the golden opportunity to do so.

{¶ 24} Accordingly, for the reasons stated herein I am compelled to dissent.

F.E. SWEENEY, J., concurs in the foregoing dissenting opinion.

———————————