GUPTA, Appellant,

v.

THE LIMA NEWS et al., Appellees.

[Cite as *Gupta v. The Lima News* (2000), 139 Ohio App.3d 538.]

Court of Appeals of Ohio,
Third District, Allen County.

Decided July 28, 2000.

*Freund, Freeze & Arnold, Neil F. Freund* and *Julie M. Olson,* for appellant.

*Cory, Meredith, Witter, Roush & Cheney* and *Donald J. Witter*; and *John A. Bussian,* for appellees.

SHAW, Judge.

Plaintiff-appellant Narendra K. Gupta, M.D., appeals the judgment of the Court of Common Pleas of Allen County granting summary judgment to defendants-appellees The Lima News and Freedom Communications, Inc. (hereinafter collectively referred to as "The Lima News") on his complaint for libel, defamation, and intentional infliction of emotional distress.

On January 11, 1996, appellant and Lima Memorial Hospital were named as co-defendants in a medical malpractice complaint. The complaint arose out of the care and treatment of Pauline Brown, a patient left in a comatose state following her January 1995 stay at Lima Memorial. A jury trial was scheduled to begin on

the matter in November 1997. However, just prior to the commencement of trial the plaintiff voluntarily dismissed its complaint against appellant and entered into a stipulation with Lima Memorial Hospital, in which Lima Memorial assumed the position of sole defendant for the malpractice trial and admitted "for the purposes of this Trial only" that it had "departed from accepted standards of care and treatment" of Brown. Accordingly, the plaintiff and Lima Memorial Hospital proceeded to trial on the issue of damages only.[1] After hearing the evidence presented, the jury returned a $1.94 million verdict in favor of the plaintiff against Lima Memorial.

The Lima News reported the verdict with a story on the front page of the November 7, 1997 edition of the paper. The text of the article appeared as follows:

### "LAWSUIT SOCKS LMH, DOCTOR

"COUNTY: Jury awards nearly $2 million to coma
victim's relatives in malpractice complaint.

"A family suing Lima Memorial Hospital and a doctor was awarded one of the largest settlements ever handed out by an Allen County jury—$1.94 million.

"The brother and four children of Pauline Brown filed the medical malpractice lawsuit against the hospital and Dr. Narendra K. Gupta. Brown was left in an irreversible coma after being admitted to the hospital Jan. 24, 1995, according to court records filed in Allen County Common Pleas Court.

"The trial lasted three days before a jury rendered its verdict late Wednesday night.

"Attorney Michael J. Malone, who represented the hospital, said he was satisfied with the outcome. The hospital accepted responsibility, but could not agree on a settlement with the family so the case went to trial, he said.

" 'We never argued who was at fault,' Malone said.

" 'Rather than bicker, we said: "Jury we accept the responsibility and you tell us how much we owe,' " Malone said.

---

1. Notwithstanding this pretrial arrangement, the court records indicate that Lima Memorial Hospital intended to pursue Dr. Gupta in the event that it was found liable in the malpractice case. This is evidenced by the trial court's decision to grant Lima Memorial Hospital leave to file a cross-claim for contribution against Dr. Gupta, and also by various provisions in the stipulation that contemplate "a second Trial as related to Defendant and Cross–Claimant Lima Memorial Hospital and Defendant and Cross–Claimant Narendra K. Gupta, M.D."

"Ironically, the awarded judgment turned out to be less than the amount the hospital had offered as a settlement to the family, Malone said. He declined to say how much LMH offered as a settlement.

"The hospital has litigation pending against Gupta. The hospital plans on pursuing Gupta for his alleged negligence in the matter, Malone said.

"Dr. Gupta told The Lima News he has a private practice and is no longer affiliated with either Lima Memorial or St. Rita's hospitals in Lima. He declined further comment on the case Thursday night.

"In closing arguments, the attorney for the family asked for more than $5 million in damages. LMH asked for $1.1 million, Malone said.

"Brown was admitted to the hospital's emergency room complaining of abdominal and side pains. For more than a month before she went to the hospital, Brown had fought pneumonia, according to court records.

"At the hospital, Dr. Gupta treated Brown in the emergency room. During her stay, she received pain medicine and oxygen. Brown's condition began deteriorating over the next two days. She had trouble breathing and had a fever, according to court records.

"Dr. Gupta was not notified about Brown's deteriorating condition under Jan. 26, 1995, two days after he first saw her, according to court records. Brown then lost consciousness and went into a coma.

"The family claimed the hospital and doctor were negligent because appropriate care was not provided, according to court records.

"Judge Richard Warren handled the case. He could not be reached for comment.

"Former Judge Michael Rumer said he doesn't recall a higher jury award in Allen County during the 17 years he served on the bench."

Following publication of the article, Dr. Gupta filed the instant action for libel against the The Lima News, arguing that the article erroneously and defamatorily asserted that he had been found liable for Brown's condition and that the article failed to note that he had been dismissed from the lawsuit. The newspaper answered the complaint, denying the allegations and asserting several defenses. Thereafter, on November 17, 1998, The Lima News filed a motion for summary judgment, arguing that the article was a substantially accurate report of judicial proceedings that fell within the statutory reporting privilege and also that the article was not defamatory. Dr. Gupta filed a memo in opposition to the newspaper's motion and, in addition, filed his own motion for summary judgment.

On October 21, 1999, the trial court entered summary judgment in favor of The Lima News. The court specifically found that appellant's claim was not action-

able because the article was "substantially true." In addition, the court found that after applying the "innocent construction rule," the article was nondefamatory as a matter of law. Appellant now asserts two assignments of error with the trial court's judgment.

I

"The trial court erred by finding that the published statements contained in the November 7, 1997 article were substantially true."

II

"The trial court erred by finding that the November 7, 1997 article was not defamatory as a matter of law."

At the outset, we note that appellate courts must conduct a *de novo* review of the record in order to determine whether a trial court has properly granted summary judgment pursuant to Civ.R. 56. See *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 244–245. When reviewing the grant of a motion for summary judgment, appellate courts review the judgment independently and do not give deference to the trial court. See *Schuch v. Rogers* (1996), 113 Ohio App.3d 718, 720, 681 N.E.2d 1388, 1389–1390. Accordingly, the appellate standard for summary judgment is the same as that of the trial court. See *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411, 413–414. In *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196, 1202, the Ohio Supreme Court enunciated the standard for summary judgment:

"[Summary judgment is proper] when, looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party."

Furthermore, in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274, the Ohio Supreme Court held that parties seeking summary judgment must "specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." (Emphasis deleted.) If the moving party satisfies that burden, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial," and summary judgment is proper if the party opposing judgment fails to set forth such facts. *Id.,* citing Civ.R. 56(E).

When alleging a claim for libel, Ohio courts have repeatedly held that a plaintiff must demonstrate the following essential elements: (1) a false statement of fact was made concerning the plaintiff; (2) the statement was defamatory towards the plaintiff; (3) the statement was written; (4) the statement was published; and (5) in publishing the statement, the defendant acted with the necessary degree of fault. See, *e.g., Franks v. The Lima News* (1996), 109 Ohio App.3d 408, 412, 672 N.E.2d 245, 248. We will begin by addressing the trial court's judgment that plaintiff failed to demonstrate that the article was a false statement of fact because it was "substantially true."

Since falsity is an essential element of a claim for libel, it follows that such an action must fail if it may be established that the published statement was truthful. See, *e.g., Sweitzer v. Outlet Communications, Inc.* (1999), 133 Ohio App.3d 102, 110–111, 726 N.E.2d 1084, 1089–1090. This general rule has been modified by statute in certain specified cases; here, The Lima News argues that it is not required to prove that the article is true in its entirety to defeat appellant's claim. Rather, The Lima News asserts that the article is "substantially true" and therefore falls within the statutory reporting privilege of R.C. 2317.05:

"The publication of a fair and impartial report of * * * the filing of any affidavit, pleading, or other document in any criminal or civil cause in any court of competent jurisdiction, or of a fair and impartial report of the contents thereof, is privileged * * *." See, also, *Oney v. Allen* (1988), 39 Ohio St.3d 103, 106, 529 N.E.2d 471, 473–474.

The statutory reporting privilege creates an affirmative defense for the reporting of court records. Even if the plaintiff has established a *prima facie* case for libel, the claim must fail if the challenged statements are a "substantially accurate" report of the contents of court records.

"In order to show that a publication falls within the privilege of R.C. 2317.05, the defendant must demonstrate that the publication is a substantially accurate report of the official record. *A publication is substantially accurate if it conveys the essence of the official record to the ordinary reader, without misleading the reader by the inclusion of inaccurate extra-record information or the exclusion of relevant information in the record."* (Emphasis added.) *Id.*

Here, the trial court concluded that the article, while not entirely precise, was substantially true as a matter of law and thereby implicitly determined that the article was protected under R.C. 2317.05.[2] We disagree. In *Young v. The*

---

2. Although the trial court's order does not mention R.C. 2317.05, The Lima News' motion for summary judgment specifically requested judgment as a matter of law based on the theory

*Morning Journal* (1996), 76 Ohio St.3d 627, 628, 669 N.E.2d 1136, 1137–1138, the Supreme Court held that if reasonable minds could reach different conclusions as to the substantial accuracy of a report, summary judgment is improper:

"[T]o assess whether summary judgment was properly granted we must determine whether reasonable minds, upon reviewing the facts in this case, could reach 'but one conclusion' about whether the article was a 'substantially accurate report.' Based on the record before us, it appears that reasonable minds could reach different conclusions.

"When The Morning Journal printed that 'James Young' had been cited for contempt, it excluded 'relevant information,' the middle initial. *This exclusion could be considered misleading to the ordinary reader.* When The Morning Journal reported that 'James Young' was from Amherst, it included 'inaccurate extra-record information.' *This inclusion could be considered misleading to the ordinary reader. We find that the combination of these two inaccuracies raises a question about whether the report was 'substantially accurate' making it impossible for reasonable minds to reach 'but one conclusion.'* Accordingly, we find that the grant of summary judgment based on an R.C. 2317.05 privilege was improper." (Emphasis added.) *Id.*

In this case, there is no statement that would alert the "ordinary reader" to the fact that appellant had been dismissed from the lawsuit and therefore could not have been held to be liable for the $1.94 million dollar jury award. Moreover, in at least one significant respect, the article is absolutely false insofar as it reports that the award was "one of the largest *settlements* ever handed out by an Allen County jury," thereby implying that both appellant and the hospital actually acknowledged their responsibility and fault for Brown's condition—an implication made all the more credible by the fact that the hospital's attorney is quoted as doing just that on behalf of the hospital in a subsequent paragraph. In short, we do not believe that there is any legally significant distinction between the situation addressed by the Supreme Court in *Young* and the case before this court, in that the instant article contains both exclusions and extraneous inclusions "that could be misleading to the ordinary reader," rendering summary judgment improper. See *id.* and *Oney v. Allen*, paragraph three of the syllabus. Accordingly, the trial court's conclusion that "reasonable minds could only conclude that the statements in the challenged article were substantially true" was erroneous. Appellant's first assignment of error is sustained.

In his second assignment of error, appellant contends that the trial court also erred by determining that the article was not defamatory as a matter

---

that the article was substantially true and therefore protected under R.C. 2317.05. See Defendant's Memorandum in Support of Motion for Summary Judgment, at **7–10.

of law. "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." 3 Restatement of the Law 2d, Torts (1977) 156, Section 559, cited in *e.g., N. Coast Cable L.P. v. Hanneman* (1994), 98 Ohio App.3d 434, 442, 648 N.E.2d 875, 879–880; accord *Franks v. The Lima News,* 109 Ohio App.3d at 412, 672 N.E.2d at 248. There are two types of defamatory publications: a publication may be defamatory on its face (defamatory *per se*) or capable of being interpreted as defamatory (defamatory *per quod*). See, generally, *Gosden v. Louis* (1996), 116 Ohio App.3d 195, 206–207, 687 N.E.2d 481, 487–488.[3] A publication is defamatory *per se* if, on its face, it reflects upon a person's character in a manner that will cause the person to be ridiculed, hated, or held in contempt, or in a manner that will harm the person in his or her trade or profession. See *id.* at 207, 687 N.E.2d at 488. When a writing is not ambiguous, the question of whether it is libelous *per se* is a question of law for the court. See *id.* and *Matalka v. Lagemann* (1985), 21 Ohio App.3d 134, 136, 21 OBR 143, 145–146, 486 N.E.2d 1220, 1222–1223. In order to make the determination, the trial court cannot consider the statement piecemeal; rather, the court must review the alleged defamatory material under the "totality of the circumstances." *Mendise v. Plain Dealer Publishing Co.* (1990), 69 Ohio App.3d 721, 726, 591 N.E.2d 789, 792.

Here, the challenged article asserts that the plaintiff had been found liable for professional medical malpractice that resulted in one of his patients falling into a coma. Frankly, it is difficult to see how a newspaper article which mistakenly reports that a named physician has just been "socked" with a "nearly $2 million" verdict, and in fact may have consented to one of the largest medical malpractice awards in the history of a county for placing a patient into an irreversible coma would not be defamatory *per se.* In *Mauk v. Brundage* (1903), 68 Ohio St. 89, 67 N.E. 152, paragraph three of the syllabus, the Ohio Supreme Court held that a newspaper article stating that a physician's "carelessness and negligence" had resulted in "a number of deaths" was defamatory *per se.* Cf. 35 Ohio Jurisprudence 3d (1982) 480, Defamation and Privacy, Section 38 ("Words which impute to a physician a general want of professional skill or knowledge are actionable per se, whether spoken or written").

Moreover, the Supreme Court recently held summary judgment to be improper where a newspaper had incorrectly reported that a local attorney had been cited for contempt. See *Young v. The Morning Journal,* 76 Ohio St.3d at 627–628, 669 N.E.2d at 1137–1138. Other courts have also observed that false statements

---

**3.** The primary difference between the two types of defamation is in how they must be pled and proved. See, generally, *Becker v. Toulmin* (1956), 165 Ohio St. 549, 555, 60 O.O. 502, 505, 138 N.E.2d 391, 396.

causing injury to a professional's reputation are generally defamatory *per se.* See, *e.g., Gosden,* 116 Ohio App.3d at 207, 687 N.E.2d at 488; see generally 50 American Jurisprudence 2d (1995) 477–488, Libel and Slander, Sections 212–229. We see no reason to depart from the settled rule and therefore hold that the statements in the challenged article before us fall within the category of libel *per se.*

However, appellees argue that the article itself is ambiguous and susceptible of an "innocent construction," and is therefore nondefamatory as a matter of law. " '[I]f allegedly defamatory words are susceptible [of] two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted.' " *E.g., Belinky v. Drake Ctr., Inc.* (1996), 117 Ohio App.3d 497, 507, 690 N.E.2d 1302, 1309, quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.* (1983), 6 Ohio St.3d 369, 372, 6 OBR 421, 423–424, 453 N.E.2d 666, 669–670. We note in passing that it appears that both appellees and the trial court have misunderstood the operation of the innocent construction rule. If a *per se* libel has an innocent construction, that does *not* mean that the statement is "not defamatory" as a matter of law. Compare Judgment Entry at *7, with *e.g, Becker v. Toulmin* (1956), 165 Ohio St. 549, 557, 60 O.O. 502, 506–507, 138 N.E.2d 391, 397–398. Rather, "[i]f a publication can by innuendo be construed to be either nonlibelous or libelous, *the question may be submitted to a jury* provided special damages have been pleaded and proved by the one claiming libel." (Emphasis added.) *Id.* at 556, 60 O.O. at 506, 138 N.E.2d at 397. Appellees contend that the article, when read in its entirety, is subject to the innocent construction that a lawsuit was filed naming the appellant, but that Lima Memorial had assumed full responsibility for the verdict and that any negligence on the part of appellant was still alleged and had not yet been determined.

Initially, we note that it is not clear that the "innocent construction" rule should be applied to the instant case. The Ohio Supreme Court has primarily mentioned the rule as a defense in special cases that are subject to a stricter "malice" standard than other defamation actions. See *McKimm v. Ohio Elections Comm.* (2000), 89 Ohio St.3d 139, 146–147, 729 N.E.2d 364, 372–373; *Local Lodge 1297, Internatl. Assn. of Machinists & Aerospace Workers v. Allen* (1986), 22 Ohio St.3d 228, 235, 490 N.E.2d 865, 871–872 (Douglas, J., concurring); *Yeager,* 6 Ohio St.3d at 372, 6 OBR at 423–424, 453 N.E.2d at 669–670. But, see, *Becker v. Toulmin* (1956), 165 Ohio St. 549, 556, 60 O.O. 502, 505–506, 138 N.E.2d 391, 396–397. However, even assuming the applicability of the rule, "[it] protects only those statements that are *reasonably* susceptible of an innocent construction." *McKimm,* 89 Ohio St.3d at 146, 729 N.E.2d at 372. "To construe a publication in an unreasonable manner in order to give it an innocent interpreta-

tion is itself incompatible with the rule's requirement that words be given their 'natural and obvious meaning.'" 8 Speiser, Krause & Gans, The American Law of Torts (1991) 436, Section 29:39, quoted in *McKimm*, 89 Ohio St.3d at 146, 729 N.E.2d at 372. See, also, *Elwert v. Pilot Life Ins. Co.* (1991), 77 Ohio App.3d 529, 540, 602 N.E.2d 1219, 1226–1227; 50 American Jurisprudence 2d (1995) 433, Libel and Slander, Section 138 ("Only reasonably innocent constructions will remove an allegedly defamatory statement from the *per se* category; a court cannot strain to find innocent meanings").

Both the trial court's and appellees' arguments rely entirely on the seventh paragraph of the article, which states that "[t]he hospital has litigation pending against Dr. Gupta" and "[t]he hospital plans on pursuing Gupta for his *alleged* negligence in the matter * * *." However, even construing these statements most favorably to the newspaper, the fact remains that in the final analysis the article contains only the word "alleged" in one sentence from which the average reader must glean that appellant was no longer involved in the lawsuit and hence was not included in the verdict. Considering the significant portions of the article that precede these statements, and in particular the headline "Lawsuit Socks LMH, *Doctor*" (emphasis added), we do not believe that an innocent construction of the entire article is reasonable.

Moreover, we reject appellees' argument that the headline can be reasonably interpreted to mean that appellant had been "sock[ed]" by the mere *filing* of the lawsuit. The article's publication coincided with the issuance of the jury's verdict, not the filing of the lawsuit. In addition, the substance of the article makes it clear that the headlines referred to the damage award, not the filing of the lawsuit. For these reasons, appellant's second assignment of error is also sustained.

Appellant's two assignments of error having been sustained, we conclude that the trial court's decision to grant summary judgment was erroneous. In sum, we believe that proper determination of this case should be governed by the decisions of the Ohio Supreme Court in *Young v. The Morning Journal* (1996), 76 Ohio St.3d 627, 669 N.E.2d 1136, *Oney v. Allen*, 39 Ohio St.3d 103, 529 N.E.2d 471 and by our own decision in *Franks v. The Lima News* (1996), 109 Ohio App.3d 408, 672 N.E.2d 245. In *Franks*, we held:

"To establish a claim for libel, appellants must demonstrate first, that the statement is false; second, that the statement is defamatory towards the plaintiff; third, that the statement was written; fourth, that the statement was published; and, fifth, that the defendant is guilty of some degree of fault. Fault is established by determining whether "the defendant acted reasonably in attempting to discover the truth or falsity or defamatory character of the publication." If a private figure plaintiff has established a prima facie showing of defamation and

the only issue remaining is fault, the plaintiff's burden is then to prove, by clear and convincing evidence, that the defendant did not act reasonably in attempting to discover the truth or falsity of the publication." (Citations omitted.) *Id.* at 412, 672 N.E.2d at 248.

Given the true status of the plaintiff's lawsuit against the doctor at the time the newspaper article was published, the report of the malpractice award against the doctor was both defamatory *per se* and arguably false. Moreover, the article clearly contains inaccurate and false statements pertaining to the doctor and the award that could only be considered misleading to the ordinary reader, and which cannot reasonably be explained away via the "innocent construction" rule. Therefore, there are genuine issues of material fact as to whether the news article was a substantially accurate report and whether the reporter acted reasonably in investigating the court records or in otherwise attempting to discover the truth or falsity of the publication. See R.C. 2317.05, *Young,* 76 Ohio St.3d at 628–629, 669 N.E.2d at 1137–1138, and *Franks,* 109 Ohio App.3d at 412, 672 N.E.2d at 248.

For these reasons, the summary judgment entered by the Allen County Court of Common Pleas is reversed, and the cause is remanded to that court for trial.

*Judgment reversed*
*and cause remanded.*

THOMAS F. BRYANT, J., concurs.

WALTERS, J., dissents.

WALTERS, Judge, dissenting.

After reviewing the article and the applicable law surrounding the tort of libel, I find that the newspaper item in this matter is neither false nor defamatory. Thus, I must respectfully dissent from the majority opinion.

I agree with the trial court's conclusion that the article, while admittedly not entirely precise, was substantially true as a matter of law. For instance, the headline "Lawsuit Socks LMH, Doctor" is a fairly accurate description of the outcome of the underlying medical malpractice action. Although it is true that Dr. Gupta was not subject to the *immediate* effect of the $1.94 million verdict, the statements made by the hospital's attorney and the court records clearly indicate that, depending on the result of the hospital's contribution action, the doctor faced the potential for serious liability.

Furthermore, I find likewise with respect to the body of the article. It is true that Dr. Gupta was named as a defendant in the *Daniels* case. Although the

article does not contain an outright statement that Dr. Gupta was eventually dismissed or that his negligence was not determined by this particular jury, the statements from the attorney representing the hospital regarding Dr. Gupta's alleged negligence and the pending litigation, provide a substantially true reporting of the events. For this reason, I must disagree with the majority's conclusion.

I also disagree as to the issue of whether the article could be considered defamatory as a matter of law. Ohio recognizes the "innocent construction rule" as a defense to defamation. *Early v. The Toledo Blade* (1998), 130 Ohio App.3d 302, 720 N.E.2d 107. Pursuant to this rule, "if allegedly defamatory words are susceptible [of] two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted." *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 372, 6 OBR 421, 423, 453 N.E.2d 666, 669. Furthermore, the issue of whether an article is defamatory is not an issue of fact, but a matter of law to be determined by the court. *Id.* at 372, 6 OBR at 423–424, 453 N.E.2d at 669–670. And, when making this legal determination, the trial court must "review the statement under the totality of the circumstances" and must read the statements at issue "in the context of the entire article" in order to determine "whether a reader would interpret them as defamatory." *Mendise v. Plain Dealer Publishing Co.* (1990), 69 Ohio App.3d 721, 726, 591 N.E.2d 789, 792.

Herein, the trial court found that when read in its entirety, the article is subject to an innocent construction. Specifically, that a lawsuit was filed against both parties but that the hospital accepted full responsibility for the verdict in the *Daniels* case, and that even after the verdict was rendered, the doctor's negligence was still alleged and not determined by that particular jury. I agree with this interpretation and, as a result, find that the article is not defamatory as a matter of law.

This does not mean that I do not sympathize with the doctor's reaction to the article. "A professional's reputation is established over the years by hard work, sacrifice and dedication." *Sethi v. WFMJ Television, Inc.* (1999), 134 Ohio App.3d 796, 812, 732 N.E.2d 451, 463. A newspaper article that fails to report a set of events with precision can easily strain that reputation. This is obviously an unpleasant occurrence. "The balance, however, is that we must have a free and unfettered public media." *Id.* I believe that in this case, that balance falls on the side of the media.

Based upon the foregoing, I would have overruled appellant's assignments of error and affirmed the grant of summary judgment.