[Cite as *Sullins v. Raycom Media, Inc.*, 2013-Ohio-4697.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No. 99235

---

# LAVELLE SULLINS

### PLAINTIFF-APPELLANT

vs.

# RAYCOM MEDIA, INC., ET AL.

### DEFENDANTS-APPELLEES

---

## JUDGMENT:
## RECONSIDERATION DENIED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-771804

**BEFORE:** Rocco, J., Boyle, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** October 24, 2013

**ATTORNEYS FOR APPELLANT**

Joshua R. Cohen
Peter G. Pattakos
Cohen, Rosenthal & Kramer
700 West St. Clair Avenue
The Hoyt Block Building - Suite 400
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEES WUAB AND WOIO, L.L.C.**

Michael K. Farrell
Melissa A. Degaetano
Baker & Hostetler L.L.P.
PNC Center
1900 East 9th Street
Suite 3200
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEE CUYAHOGA COUNTY CRIME STOPPERS**

George S. Crisci
Jonathan D. Decker
Zashin & Rich Co., L.P.A.
55 Public Square, 4th Floor
Cleveland, Ohio 44113

**ATTORNEY FOR APPELLEE PINPOINT MEDIA, INC.**

Daniel Thiel
75 Public Square
Suite 650
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

**{¶1}** Defendants-appellees WOIO and WUAB (collectively, "WOIO") have filed a motion for reconsideration or, alternatively, to certify conflict arguing that this court's August 15, 2013 decision: (1) imposes liability without fault, (2) ignores the lack of evidence showing negligence on the part of WOIO, and (3) is contrary to the Ohio Supreme Court's application of the fair report privilege in *Oney v. Allen*, 39 Ohio St.3d 103, 529 N.E.2d 471 (1988). For the reasons that follow, WOIO's motion is denied.

**{¶2}** WOIO first argues that this court should reconsider its August 15, 2013 decision because the court "based its ruling" on "the incorrect statement that '[u]nless a privilege applies, damages and fault are generally presumed to exist if a statement is defamatory per se'" and thereby "impose[s] liability" on appellees "without fault." We disagree.

**{¶3}** As set forth in our August 15, 2013 decision, we found that appellees' inaccurate depiction of Sullins on the *Warrant Unit* program as a fugitive presently wanted and evading arrest on an outstanding warrant for passing bad checks is defamation per se and that the innuendo that Sullins is a bad check artist is defamation per quod. We further found that Sullins presented sufficient evidence to defeat summary judgment as to whether appellees were negligent in publishing false statements about him and that there was an issue of fact as to whether appellees' defamatory statements were privileged. This court has not presumed anything regarding appellees' fault in this case. Rather, based on our review of the record, we determined that there are genuine issues of material fact as to who, if anyone, bears responsibility for the defamatory depiction of

Sullins on the *Warrant Unit* program.    Accordingly, this argument lacks merit.

{¶4}    WOIO also contends that our decision in this case is at odds with the Ohio Supreme Court's decision in *Oney v. Allen*, 39 Ohio St.3d 103, 529 N.E.2d 471 (1988). Once again, we disagree.   In *Oney*, the issue was whether publication by a newspaper that "Mike Oney, 32, of Noble Road, Shiloh," had been indicted for "trafficking" was a "fair and impartial" report of an indictment of "Mike Oney (aka) Stoney" for "trafficking" and, as such, was privileged pursuant to R.C. 2317.05.   *Id.* at 103-105. Oney claimed that the privilege was inapplicable because the defendants added information that was not in the indictment, i.e., the age and address of Mike Oney, and failed to include information that was in the indictment ("aka Stoney"), in the report.   *Id.* at 106.

{¶5} In *Oney*, the prosecutor had given a reporter "off the record" a list of individuals (including addresses, dates of birth, and social security numbers) who were going to be indicted on drug trafficking charges.   *Id.* at 103-104.   The list included "Oney, Mike (aka) Stoney."   The prosecutor claimed that he told the reporter that a court order protected the indictments from becoming public until the defendants were in custody.   *Id.*   The reporter claimed that he was given the list with the understanding that he would not publish the names until after the sheriff's department began to arrest the individuals.   *Id.*   The court did not need to consider whether any "understanding" to delay publication impacted the reporting privilege because, prior to publication, the indictment of Mike Oney for trafficking was publicly reported on the criminal court's

docket.  *Id.* at 103-104, 107.  The reporter compared the names on the list he had received from the prosecutor with those listed on the court's docket and published an article reporting on the indictments the following day.  *Id.* at 103-104.

{¶6} In concluding that the publication was privileged, the court noted that the prosecutor's office had identified Oney, by name, address, age, and social security number, as the subject of the indictment, and that when Oney went to the sheriff's department after learning of the indictment, he confirmed that his address and social security number were the same.  *Id.* at 107.  "Under these facts," the court "reject[ed] the argument that [Oney] was never indicted for trafficking."  *Id.*  Because under "the facts and circumstances which provide the context to the docketed indictment," the "pivotal fact" — i.e., "Mike Oney was indicted" — was true, the court determined that the privilege applied, even though Oney was mistakenly indicted.  *Id.*  The court held that "[a] publication is substantially accurate if it conveys the essence of the official record to the ordinary reader, without misleading the reader by the inclusion of inaccurate extra record information or the exclusion of relevant information in the record."  *Id.* at 106, citing 3 Restatement of the Law 2d, Torts, Section 611, Comment f  (1965); *Mark v. Seattle Times*, 96 Wash.2d 473, 493, 635 P.2d 1081 (1982).

{¶7} WOIO contends that "[t]his case is no different" because "[i]t is undisputed that [Sullins] had already been convicted of passing bad checks when the Sheriff's department erroneously told Crime Stoppers that he was wanted for passing bad checks."  The fact is, however, that this case is different.  Indeed, the facts of this case that

distinguish it from *Oney* are so obvious, this court did not think it needed to explicitly distinguish *Oney* in its opinion.

{¶8} Whereas in *Oney*, the court determined that the "pivotal" aspect of the published statement — i.e., that Mike Oney was indicted — was "true," *Oney* at 107, Sullins was not a fugitive, not presently wanted, and not evading arrest for "passing bad checks" — as represented on the *Warrant Unit* program — at the time the program aired. WOIO's application for reconsideration, as did its briefs, conveys the attitude that because Sullins had been previously convicted of one count of passing bad checks more than ten months before the *Warrant Unit* program aired and because he had been previously charged with or convicted of other minor misdemeanor or traffic-related offenses (including offenses for which warrants were outstanding at the time the program aired), Sullins is somehow not entitled to recourse for appellees' defamatory statements. This is incorrect. Simply because Sullins was convicted of, or charged with, other offenses in the past does not mean that he is undeserving of protection from defamatory statements.

{¶9} Further, in this case, unlike in *Oney*, the government placed an explicit caveat on the *accuracy* of the information it provided, i.e., that the warrant information received from the sheriff's department should be updated by checking the court's docket to confirm its continued accuracy prior to airing, which appellees arguably failed to do. What WOIO describes as a "caveat" to the publication of the information in *Oney* related only to the *timing* of the publication, not the *accuracy* of the information to be published.

The court in *Oney* did not consider whether the prosecutor's "caveat" to delay publication of the information the reporter had received impacted the fair report privilege because prior to the publication, the indictment of Mike Oney for trafficking was publicly reported on the criminal court's docket. *Oney* at 103-104, 107. Once it became part of the public record, the court found that there was no restriction on the timing of the publication of that information. *Id.* at 107.

{¶10} Finally — and most significantly — in this case, unlike in *Oney*, there was significant, potentially misleading, extra-record information included in the publication. This is not a case in which the fact that a warrant had been issued for Sullins's arrest for passing bad checks was matter-of-factly reported in a police news blotter. If that were the case, appellees' publication might well have been protected by the fair report privilege.

{¶11} Appellees, however, did not simply publish inaccurate information, received from the sheriff's department, regarding the warrant that had been previously issued for Sullins's arrest. Sullins was identified on the *Warrant Unit* program as a fugitive from justice, one of "Cleveland's 25 Most Wanted" — someone wanted more than all other wanted persons, someone so dangerous that the narrator of the program cautioned viewers: "Do not attempt to apprehend these people. You leave that to the professionals."

{¶12} Whereas *Oney* was a case in which, based on the undisputed facts, the court determined that the privilege applied as a matter of law, this case is one in which, based

on disputed facts — including the effect of the "caveat" from the sheriff's department to update the warrant information received prior to airing, whether the "caveat" was complied with, and the impact of identifying Sullins as a fugitive wanted on an outstanding warrant for passing bad checks and as one of "Cleveland's 25 Most Wanted" — the determination of whether the representations made regarding Sullins on the *Warrant Unit* program constituted a "substantially accurate," "fair and impartial reporting" of the warrant information received from the sheriff's department is more appropriately resolved by a jury. *See, e.g., Young v. Morning Journal*, 76 Ohio St.3d 627, 628, 669 N.E.2d 1136 (1996).

{¶13} Finally, WOIO contends that because it did nothing but broadcast a program that it "understood * * * to be based on official, public records provided by the sheriff's department," and did not participate in creating, editing, or producing the *Warrant Unit* program, it cannot be liable for any defamatory statements relating to Sullins.

{¶14} Citing *Amann v. Clear Channel Communications, Inc.*, 165 Ohio App.3d 291, 2006-Ohio-714, 846 N.E.2d 95 (1st Dist.2006), and several authorities from jurisdictions outside Ohio, WOIO argues that there is no factual basis for imposing liability on WOIO in this case because "relying on wire services, news aggregators, and similar organizations as to the content they deliver is entirely reasonable and not negligent." However, as discussed above, this is not a case in which WOIO simply republished material taken from a reputable news service. Further, *Amann* was not a defamation case. It involved whether a broadcaster owed a duty of care to its audience

to investigate the accuracy of claims made in the advertisements it broadcast. *Id.* at ¶ 6.

{¶15} The other cases cited by WOIO in support of this argument are likewise distinguishable. For example, *Young v. Russ*, 11th Dist. Lake No. 2003-L-206, 2005-Ohio-3397, involved a defamation claim arising out of a news story that reported that the plaintiff had harmed children at the school where he worked after a child had recanted the claims. The Eleventh District held that the anchorman who merely introduced the story but had no involvement in the origination or investigation of the story, no role in drafting scripts for, editing, modifying, or contributing to the story, and no involvement in the decision to pursue or air the story, had no liability. *Id.* at ¶ 55. As to the news reporter who investigated the story and the broadcast station who decided to air the story with knowledge that the child had recanted, the court held that an issue of fact existed as to their alleged negligence. *Id.* at ¶ 52-53. *McPeek v. Leetonia Italian-American Club*, 174 Ohio App.3d 380, 2007-Ohio-7218, 882 N.E.2d 450 (7th Dist.), involved a defamation action arising from disciplinary proceedings in a social club.

{¶16} Despite its attempt to minimize its role, WOIO did something in this case. It selected the *Warrant Unit* program for airing on its station, with knowledge of its content and format, including the segment entitled "Cleveland's 25 Most Wanted." It selected the program for airing in the hopes of entertaining and attracting viewers to its station by its arguably sensationalist, inflammatory content. WOIO's argument that it had nothing to do with the content of the program it had selected to air, had no role in ensuring that the information provided in the program was accurate, and had no

information as to how the local fugitives identified as "Cleveland's 25 Most Wanted" were chosen, does not, as WOIO contends, absolve it of liability, but rather, creates an issue of fact for the jury to decide. None of the authorities cited by WOIO supports a contrary conclusion.

**{¶17}** Accordingly, for the reasons set forth above, WOIO's application for reconsideration or, alternatively, to certify conflict is denied.

_____
KENNETH A. ROCCO, JUDGE

MARY J. BOYLE, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR