APRIL, APPELLANT, *v.*
REFLECTOR-HERALD, INC.,
APPELLEE.

(No. H-87-48—Decided
September 2, 1988.)

*Dennis B. Trimboli,* for appellant.
*Louis Colombo,* for appellee.

*Per Curiam.* This is an appeal from the Huron County Court of Common Pleas. Mary April, appellant, appeals from the trial court's grant of summary judgment in favor of the Reflector-Herald, Inc., appellee. In her complaint April alleged that appellee, Reflector-Herald, Inc., had defamed her in three separate articles printed in The Norwalk Reflector, a daily newspaper published by appellee.

The events which precipitated the news articles are helpful to a clear understanding of this case. April was employed as a part-time cook by the Huron County Sheriff's Department. She either was fired or resigned when her superior accused her of falsifying her time records. April maintained that she did not falsify her time records, but that she merely came in to work fifteen minutes early and left fifteen minutes early, pursuant to custom.

In response to her termination, April filed an age discrimination charge against the sheriff's department. This case was settled between the parties when April agreed not to pursue her age discrimination case in exchange for $2,500 and a neutral employment reference from the sheriff's department. This settlement was entered into by Huron County Sheriff Dunlap without the knowledge of the Huron County Board of Commissioners.

When the county commissioners learned of the settlement, they demanded that Sheriff Dunlap attend the next commissioners' meeting and explain the $2,500 payment made without their authorization. After the commissioners' meeting, Sheriff Dunlap was asked by a reporter for the Norwalk Reflector why April had been fired. Sheriff Dunlap replied that April had been fired for stealing from the department. The Norwalk Reflector then ran a story, on September 5, 1986, which read, in pertinent part:

"Dunlap * * * apologized to commissioners for failing to tell them about a recent cash settlement with a former employee.

" 'I want to explain the Mary April deal,' Dunlap said.

"Ms. April, a former employee, was fired by the sheriff some time ago. Dunlap contends she was stealing from the department. Mrs. April contested the dismissal on the basis of age discrimination through the Equal Employment Opportunity Commission. Dunlap agreed to settle her complaint for $2,500."

After this news story was published, April promptly filed a defamation suit against Sheriff Dunlap and the sheriff's department. The filing of this complaint was reported in The Norwalk Reflector on September 9, 1986. This second article quoted extensively from the complaint filed by April and again stated, "Dunlap said Mrs. April was dismissed after allegedly stealing on the job."

The final Norwalk Reflector article was published on September 11, 1986, and reported the reactions of the sheriff and the commissioners to the defamation suit filed by April. This article states in part:

"Huron County officials say they will stand firm against a $130,000 lawsuit filed against Sheriff Thomas Dunlap, and vowed not to settle the dispute out of court.

"* * *

" 'We're not going to settle twice. That lady's already been compensated,' said Prosecutor Michael Fegen. 'We think it's very unfortunate that some people do not honor these settlements.'

"* * *

"Commissioner Roy Palm wants

to find out where Dunlap mentioned the reason for Mrs. April's dismissal. Palm does not believe it happened at the September 4th meeting the commissioner had with the sheriff.

" 'That never happened, to my knowledge. I never heard any comment made about the accusation of stealing,' he said. 'It was certainly not made in our office.' "

After this series of articles was published, April amended her complaint to add Reflector-Herald, Inc., appellee herein, as a defendant in her defamation lawsuit. Defendants Sheriff Dunlap and the sheriff's department entered into a settlement agreement with April and are no longer parties to this action.

The trial court granted summary judgment in favor of Reflector-Herald, Inc., stating:

"[T]he alleged deflamatory [sic] statements complained of were made at a Legislative Session of the County Commissioners and in the absence of evidence by affidavit or deposition of actual malice or made with the intent to harm the plaintiff, the same are privileged. In addition, the reporting of the allegations contained in the lawsuit filed by plaintiff are absolutely privileged."

April appeals from this judgment entry with two assignments of error:

"I. The trial court improperly dismissed by Summary Judgment the plaintiff's case against defendant Reflector-Herald as said dismissal was based upon a mistake of fact not in issue between the parties.

"II. The trial court was incorrect in finding that 'the reporting of the allegations contained in the lawsuit filed by plaintiff are absolutely privileged.' "

April's first assignment of error is grounded on the argument that the trial court's decision was based on an error of fact, namely, that the statement accusing April of theft was made during a legislative session of the county commissioners. April argues that since the defamatory statement was not made during legislative proceedings, the trial court's holding that the reporting of the statement is privileged must fail.

There are two privileges to defamation recognized at common law relating to legislative or judicial proceedings. The first is an absolute privilege and arises when a defamatory statement is made during an official proceeding. *Costanzo* v. *Gaul* (1980), 62 Ohio St. 2d 106, 16 O.O. 3d 134, 403 N.E. 2d 979. The second is a qualified privilege and arises when a defamatory statement made during an official proceeding is reported or published outside the official proceeding. *Grafton* v. *American Broadcasting Co.* (1980), 70 Ohio App. 2d 205, 24 O.O. 3d 259, 435 N.E. 2d 1113.

In the case presently under consideration, the record reveals that the allegedly defamatory statement made about April occurred after the legislative session of the Huron County Board of Commissioners had adjourned. Therefore, neither of the above-mentioned privileges will support the trial court's judgment in this case.

However, this does not mean, as April would suggest, that the trial court's judgment must be reversed. The mere fact that a trial court's reason for a decision is erroneous does not authorize the reversal of an otherwise correct judgment. *Agricultural Ins. Co.* v. *Constantine* (1944), 144 Ohio St. 275, 284, 29 O.O. 426, 430, 58 N.E. 2d 658, 663. Therefore, if there is any other basis on which this court can find the trial court's judgment entry to be correct, the judgment must stand.

Reflector-Herald asserts that the privilege of neutral reportage supports the trial court's decision and that this

court must thus affirm the court below. The privilege of neutral reportage is addressed in *Edwards* v. *Natl. Audubon Soc., Inc.* (C.A. 2, 1977), 556 F. 2d 113, where the court stated:

"* * * [W]hen a responsible, prominent organization * * * makes serious charges against a public figure, the First Amendment protects the accurate and disinterested reporting of those charges, regardless of the reporter's private views regarding their validity. * * *" *Id.* at 120.

April correctly points out that she is not a public figure, as was the plaintiff in *Edwards,* and concludes that the neutral reportage privilege therefore does not apply to defamatory statements made about her. Appellee, Reflector-Herald, urges that the fact that the plaintiff in *Edwards* was a public figure is incidental to its holding and therefore the neutral reportage privilege does apply to the instant case even though April is a private figure.

We agree with appellee, Reflector-Herald. The reasoning underlying the neutral reportage privilege in *Edwards* is clear.

"* * * We do not believe that the press may be required under the First Amendment to suppress newsworthy statements merely because it has serious doubts regarding their truth. Nor must the press take up cudgels against dubious charges in order to publish them without fear of liability for defamation. * * * The public interest in being fully informed about controversies that often rage around sensitive issues demands that the press be afforded the freedom to report such charges without assuming responsibility for them.

"The contours of the press's right of neutral reportage are, of course, defined by the principle that gives life to it. Literal accuracy is not a prerequisite: if we are to enjoy the blessings of a robust and unintimidated press, we must provide immunity from defamation suits where the journalist believes, reasonably and in good faith, that his report accurately conveys the charges made. * * *" *Id.* at 120.

In the case *sub judice,* appellee accurately conveyed the charges made against April by Sheriff Dunlap. The statement was newsworthy in that it was made in connection with the controversy over why Sheriff Dunlap had expended public funds to settle April's age discrimination case without the permission or knowledge of the county commissioners.

We see no legitimate difference between the press's accurate reporting of accusations made against a private figure and those made against a public figure, when the accusations themselves are newsworthy and concern a matter of public interest. In this respect, we agree with the decision rendered by the Court of Appeals for the Second Appellate District, where that court held, in *House of Wheat* v. *Wright* (Oct. 10, 1985), Montgomery App. No. 8614, unreported:

"* * * Although Edwards was a public figure whereas appellants are private figures, we believe these principles still apply." *Id.* at 67.

Appellant argues that *Edwards* may not be expanded to include private figure plaintiffs, citing *Dixson* v. *Newsweek, Inc.* (C.A. 10, 1977), 562 F. 2d 626. *Dixson* involved a defamatory statement made about a private figure. The court stated:

"* * * *Edwards* v. *National Audubon Society, Inc.,* 2 Cir., 556 F. 2d 113, is not in point. The plaintiff there was a public figure. The protections afforded the press when it reports on public officials and public figures do not shield it from liability when it publishes defamatory statements concerning private individuals. See *Gertz* v. *Robert Welch* [1974], 418 U.S. [323] at 343, 94 S.Ct. 2997." *Id.* at 631.

While this court could choose to use *Dixson* as guidance on this point, we are not bound by decisions of the Tenth Circuit, and feel the better reasoned approach is stated in *House of Wheat, supra.*

Once it has been decided that the neutral reportage privilege extends to private-figure plaintiffs, we must turn our attention to the issue of whether the publications complained of by appellant in the instant case fit within this privilege. Before this privilege will attach, three elements must be present. First, an allegedly defamatory accusation must be made by a responsible, prominent organization or individual. Second, the accusation must concern a matter of public interest. Third, a media defendant must have accurately and disinterestedly republished the defamatory accusation. Accurate and disinterested publication is present "where the journalist believes, reasonably and in good faith, that his report accurately conveys the charges made." *Edwards, supra,* at 120. If these tests are met, the privilege will attach even though the journalist "has serious doubts regarding [the] truth [of newsworthy statements]." *Id.* Further, the journalist is under no duty to "take up cudgels against dubious charges in order to publish them without fear of liability for defamation." *Id.*

Applying these tests to the instant case, the accusation that April was fired for stealing on the job was made by Sheriff Dunlap, a responsible and prominent individual. This matter became one of public interest when the controversy broke out between the sheriff and the county commissioners concerning the unauthorized settlement of April's age discrimination case. Finally, no one disputes that the news articles accurately and disinterestedly reported the sheriff's accusation that April was fired for stealing.

As long as the publisher does not espouse or concur in the charges made by others, or deliberately distort the statements to launch a personal attack on the plaintiff, the neutral reportage privilege will attach. In the instant case, appellee accurately and disinterestedly reported the sheriff's accusations against April.

We, therefore, find that the news articles of September 5, 9, and 11 were privileged under the neutral reportage rule insofar as they refer to any statement made by Sheriff Dunlap to the effect that April was fired for stealing on the job. Based on the above analysis, appellant's first assignment of error is not well-taken.

Appellant's second assignment of error questions the trial court's finding that "the reporting of the allegations contained in the lawsuit filed by plaintiff are absolutely privileged." We find this assignment of error not well-taken. R.C. 2317.05 grants a privilege as follows:

"The publication of a fair and impartial report of * * * the filing of any affidavit, pleading, or other document in any criminal or civil cause in any court of competent jurisdiction, or of a fair and impartial report of the contents thereof, is privileged, unless it is proved that the same was published maliciously, or that defendant has refused or neglected to publish in the same manner in which the publication complained of appeared, a reasonable written explanation or contradiction thereof by the plaintiff, or that the publisher has refused, upon request of the plaintiff, to publish the subsequent determination of such suit or action. This section and section 2317.04 of the Revised Code do not authorize the publication of blasphemous or indecent matter."

There is no indication in the record that the article of September 9, to the extent it reports the contents of plain-

tiff's complaint for defamation and plaintiff's complaint to the EEOC for age discrimination, was published maliciously. Nor is there any indication that appellee refused or neglected to publish a reasonable written explanation made by appellant of the information contained in these documents. Finally, there is no indication that appellant requested appellee to publish the subsequent determination of her defamation action. Therefore, since the material published was not blasphemous or indecent, R.C. 2317.05 protects appellee for the September 9 article to the extent that it quotes from, refers to or comments on appellant's defamation complaint and age discrimination complaint. The remainder of the September 9 article is protected under the neutral reportage privilege as discussed above.

On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Huron County Court of Common Pleas is affirmed. Costs assessed against appellant.

*Judgment affirmed.*

RESNICK, P.J., CONNORS and HANDWORK, JJ., concur.