WILSON, Appellant,

v.

GLASTIC CORPORATION, Appellee.

[Cite as *Wilson v. Glastic Corp.,* 150 Ohio App.3d 706, 2002-Ohio-6821.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 80840.

Decided Dec. 12, 2002.

</div>

Shapiro, Marnecheck & Riemer, Donald G. Riemer and Matthew A. Palnik, for appellant.

Willacy, LoPresti & Marcovy, Salvatore J. LoPresti and Timothy A. Marcovy, for appellee.

COLLEEN CONWAY COONEY, Judge.

{¶ 1} Plaintiff-appellant Reginald Wilson appeals the trial court's granting summary judgment in favor of defendant-appellee Glastic Corporation. Wilson argues that he did not have to exhaust his contractual remedies prior to pursuing a retaliation claim pursuant to R.C. 4123.90. We find no merit to the appeal and affirm.

{¶ 2} A review of the record indicates the following facts.

{¶ 3} The employees of Glastic Corporation are governed by a collective bargaining agreement, which provides the terms and conditions of employment at Glastic Corporation. The collective bargaining agreement contains a standard grievance and arbitration provision, providing that all disputed matters between an employee and management are handled according to a very specific procedure that ultimately culminates in arbitration.

{¶ 4} Wilson was hired by Glastic on September 4, 2000. On October 17, 2000, Wilson suffered an injury to his wrist while performing duties at Glastic. He did not file a workers' compensation claim at this time because other employees had informed him that Glastic fires employees for filing workers' compensation claims. He stopped working in December 2000 because the injury was exacerbated by his work. His physician, Dr. Fumich, placed him on light-duty work, and Wilson then filed a workers' compensation claim.

{¶ 5} Approximately a week later, Wilson's wrist had deteriorated further, and Dr. Fumich ordered him to take a leave of absence. Glastic, accordingly, granted him a leave of absence until January 14, 2001.

{¶ 6} According to Wilson's affidavit, at this time, he noticed a change in attitude towards him by Mr. Azzarello, Glastic's human resources manager. Wilson testified at his deposition that two weeks prior to his scheduled return, Azzarello telephoned him and angrily demanded that he provide Azzarello with a doctor's note stating his exact return date. On January 19, Wilson had still not returned to work and had not provided a doctor's note for an extended leave of absence. On this date, Azzarello wrote Wilson a letter demanding the note from Dr. Fumich and threatened to fire Wilson if he failed to comply with the letter requirement and for being on unapproved leave.

{¶ 7} Wilson obtained permission for extended leave from Dr. Fumich, and Glastic extended his leave to March 5 based on the doctor's certification.

{¶ 8} Prior to his return date, Azzarello ordered that Wilson be examined by Dr. Kaplan to ascertain whether Wilson could perform light-duty work. Dr. Kaplan examined Wilson on February 26 and determined that Wilson could perform light-duty work. At the same time, Wilson's personal physician, Dr. Fumich, determined that Wilson should not return to work and extended Wilson's leave until March 30. In spite of this, on March 13, Azzarello wrote a letter to Wilson informing him that pursuant to Dr. Kaplan's opinion, he was not "totally disabled" and ordering Wilson to return to work as of March 19 to perform light-duty work. According to Wilson, he complied with Azzarello's demand to return early, even though it was against his doctor's advice, because he was afraid he would be fired if he did not return.

{¶ 9} On his first day back, Wilson reinjured his wrist by instinctively attempting to catch a heavy item using his injured wrist. He immediately informed his supervisor and was sent by the company to see Dr. Breitenbach. According to Wilson, although his wrist was swollen, the doctor did not X-ray the wrist and, after a cursory examination, allowed Wilson to return to his light-duty work.

{¶ 10} Wilson, however, refused to return to work that day because he had been injured performing light-duty work. The next day, March 20, he went to see his personal physician, Dr. Fumich, who ordered him not to return to work until March 30, as he had previously ordered. Wilson informed his shift supervisor of his doctor's order and on March 21 gave him Fumich's disability certificate authorizing Wilson to be off work until March 30.

{¶ 11} On March 21, Azzarello called Wilson and demanded that he return to work. Wilson explained that his doctor had not authorized him to work until March 30. Azzarello again called on March 22 and ordered Wilson to come to work for a meeting. Along with Wilson and Azzarello, present at the meeting were Wilson's shop steward, Lonnie McClain, and the union vice president, Jeff Tachett. According to Wilson's affidavit, Azzarello was very hostile towards him at the meeting and questioned the validity of Dr. Fumich's note extending Wilson's leave.

{¶ 12} Azzarello placed Wilson on a disciplinary suspension while an investigation took place to determine whether Wilson had forged his doctor's notes. Wilson filed a grievance with the union regarding this suspension, which was denied.

{¶ 13} On April 2, 2001, Azzarello wrote a letter to Wilson informing him that he was discharged as of March 26 for failure to return to work on March 21 as

instructed. According to Azzarello, Wilson's failure to return violated Article 13, Section 6(e) of the collective bargaining agreement.

{¶ 14} In response, Wilson filed a grievance with the union in accordance with the collective bargaining agreement. His grievance was denied, and Wilson attempted to take his grievance to the second step, but his grievance was again denied. Wilson chose not to take his grievance to arbitration. Instead, on April 23, 2001, Wilson filed suit in the court of common pleas pursuant to R.C. 4123.90, alleging that he was terminated because he had filed for workers' compensation.

{¶ 15} Glastic moved for summary judgment on October 22, 2001, arguing that (1) Wilson failed to exhaust his administrative remedies set forth in the collective bargaining agreement prior to filing suit in the court of common pleas, (2) federal law preempted Wilson's claims, (3) Wilson was collaterally estopped from bringing a claim by Glastic's final and binding grievance process, and (4) there was no evidence presented that Wilson was fired for filing a workers' compensation claim. The trial court granted Glastic's motion for summary judgment, stating, "Defendant's MSJ filed 10/22/01 is granted as Plaintiff has failed to exhaust all contractual remedies prior to filing the captioned matter. Final." Wilson appeals and raises one assignment of error contesting the trial court's granting summary judgment based on his failure to exhaust his contractual remedies.

### Failure to Exhaust Contractual Remedies

{¶ 16} Appellate review of summary judgments is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241; *Zemcik v. LaPine Truck Sales & Equip.* (1998), 124 Ohio App.3d 581, 585, 706 N.E.2d 860. The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, as follows:

{¶ 17} "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273–274."

{¶ 18} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth

specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

{¶ 19} Wilson argues that summary judgment was improperly granted because, pursuant to R.C. 4123.90, exhaustion of contractual remedies contained in the collective bargaining agreement is not required.[1] R.C. 4123.90 states:

{¶ 20} "No employer shall discharge * * * any employee because the employee filed a claim * * * under the worker's compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer. Any such employee may file an action in the common pleas court of the county of such employment in which the relief which may be granted shall be limited to reinstatement with back pay, if the action is based upon discharge * * *. The action shall be forever barred unless filed within one hundred eighty days immediately following the discharge * * *, and no action may be instituted or maintained unless the employer has received written notice of a claimed violation of this paragraph within ninety days immediately following the discharge * * *."

{¶ 21} In *Alexander v. Gardner–Denver Co.* (1974), 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147, the United States Supreme Court addressed whether an employee waived his claim that his discharge violated Title VII of the Civil Rights Act of 1964 by first pursuing his grievance to final arbitration under the nondiscrimination clause of a collective bargaining agreement. The court reasoned:

{¶ 22} "In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence." Id. at 49–50, 94 S.Ct. 1011, 39 L.Ed.2d 147. See, also, *Barrentine v. Arkansas–Best Freight Sys., Inc.* (1981), 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (truck drivers' FLSA claim was not barred by the prior submission of their grievances to contractual resolution procedures); *Truax v. EM Industries, Inc.* (1995), 107 Ohio App.3d 210, 668 N.E.2d 524 ("just cause" provision in collective bargaining agreement did not

---

1. Although Glastic contends that Wilson failed to rebut this argument in his brief in opposition to summary judgment, Glastic did address this argument on page 10 of its brief. Furthermore, the failure to rebut a legal argument raised in a "movant's" motion for summary judgment does not constitute waiver for purposes of appeal, because if the trial court based summary judgment on an incorrect legal premise, we must reverse based upon our de novo review.

prevent plaintiff from pursuing R.C. 4123.90 claim in trial court); *Thomas v. Gen. Elec. Co.* (1999), 131 Ohio App.3d 825, 723 N.E.2d 1139 (employee not required to exhaust administrative remedies contained in CBA before filing R.C. 4112.01 claim in trial court).

{¶ 23} "While courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. at 737, 101 S.Ct. 1437, 67 L.Ed.2d 641.

{¶ 24} Following *Gardner-Denver* and its progeny, we hold that by filing a claim for retaliatory discharge pursuant to R.C. 4123.90, Wilson was asserting a statutory right independent of the collective bargaining agreement. A union cannot prospectively waive the individual right of a member to select a judicial forum for the resolution of the member's state statutory claims. *Gardner–Denver,* 415 U.S. at 52, 94 S.Ct. 1011, 39 L.Ed.2d 147.

{¶ 25} Because the claims under the collective bargaining agreement and those pursuant to statute are separate and independent of each other, Wilson's failure to pursue the grievance process to final arbitration is of no consequence. As the court recently found in *Luginbihl v. Milcor Ltd. Partnership,* 3d Dist. No. 1–01–162, 2002-Ohio-2188, 2002 WL 987853, an employee who has abandoned the grievance procedure can still bring a statutory claim in the court of common pleas:

{¶ 26} "[Appellant] properly brought her claim pursuant to R.C. 4112.99 in state court even after she filed a grievance with her union and then abandoned the procedure prior to full exhaustion. While there is a strong public policy in favor of pursuing matters through arbitration, [appellant's] state law discrimination claim is her own and may not be forfeited by her membership in a labor organization." Id. at ¶ 29. See, also, *Truax,* 107 Ohio App.3d at 217, 668 N.E.2d 524 (because claims are independent, issues raised before the trial court were not barred by collateral estoppel by issues raised in grievance procedure).

{¶ 27} Therefore, because Wilson's statutory claim is separate from the contractual collective bargaining agreement claim, the trial court erred in finding that Wilson's failure to exhaust his administrative remedies barred his court action.[2]

---

2. Although Glastic relies on *Nemazee v. Mt. Sinai Med. Ctr.* (1990), 56 Ohio St.3d 109, 564 N.E.2d 477, in support of its argument that Wilson had to exhaust his administrative remedies, that case is distinguishable because it does not involve a statutory right or a collective bargaining agreement.

{¶ 28}   However, even though we find that the trial court erred in finding that Wilson failed to exhaust his administrative remedies, we must affirm the trial court's judgment if it reached the right result, although for the wrong reasons. *April v. Reflector–Herald, Inc.* (1988), 46 Ohio App.3d 95, 97, 546 N.E.2d 466; *McCormick v. Haley* (1973), 37 Ohio App.2d 73, 77, 66 O.O.2d 132, 307 N.E.2d 34. In Glastic's motion for summary judgment, Glastic also argued that Wilson's claim was preempted by Section 301(a) of the Labor Management Relations Act (Section 185, Title 29, U.S.Code).

{¶ 29}   In *Lingle v. Norge Div. of Magic Chef, Inc.* (1988), 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410, the United States Supreme Court addressed the issue of when a statutory discharge claim is preempted by Section 301(a).   The court held that a state-law retaliatory-discharge claim was independent of the collective bargaining agreement and, thus, not preempted by federal labor law, when the state-law claim presented purely factual questions that could be resolved without interpretation of the collective bargaining agreement.   Id. at 407, 108 S.Ct. 1877, 100 L.Ed.2d 410.   The court noted that " 'not every dispute * * * tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301.' "   Id. at 413, 108 S.Ct. 1877, 100 L.Ed.2d 410, fn. 12, quoting *Allis–Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 211, 105 S.Ct. 1904, 85 L.Ed.2d 206.

{¶ 30}   Accordingly, Section 301(a) of the Labor Management Relations Act preempts state claims in two situations: if the state claim is founded on rights created by collective bargaining agreements or if the rights are created by state law but the application of the law is dependent on an analysis or interpretation of a collective bargaining agreement.   *Sinea v. Denman Tire Corp.* (1999), 135 Ohio App.3d 44, 732 N.E.2d 1033.

{¶ 31}   The court in *Lingle* found that no interpretation of the "just cause" termination clause in the collective bargaining agreement was necessary to resolve the state retaliatory claim.

{¶ 32}   Unlike the retaliatory-discharge claim in *Lingle,* supra, Wilson's claim cannot be resolved by a purely factual inquiry into Wilson's conduct and Glastic's conduct and motive.   The determination of whether Glastic's reason for terminating Wilson was merely pretextual requires an interpretation of the collective bargaining agreement to ascertain if Glastic had the authority to call Wilson back to work to perform light-duty work on March 19, despite the fact that Wilson's doctor had authorized leave until March 30, and whether once Wilson reinjured himself upon return, Glastic had the authority to ignore Wilson's personal physician's order to take a leave of absence, in preference to its own doctor's suggestion that Wilson could immediately return to light-duty work.

{¶ 33} Because we find that under the specific facts of the instant case Wilson's retaliatory-discharge claim requires interpretation of the collective bargaining agreement, the claim is preempted under Section 301(a) of the Labor Management Relations Act.

{¶ 34} The trial court's granting summary judgment, albeit on incorrect reasoning, was proper. Wilson's sole assignment of error is overruled, and the judgment is affirmed.

Judgment affirmed.

PATRICIA ANN BLACKMON, P.J., concurs.

FRANK D. CELEBREZZE JR., J., concurs in judgment only.

FRANK D. CELEBREZZE JR., Judge, concurring in judgment only.

{¶ 35} While I concur with the majority's ultimate conclusion, I would find that the lower court was correct in granting summary judgment in favor of the appellees for appellant's failure to exhaust all administrative remedies provided through the collective bargaining agreement.

{¶ 36} First and foremost, the appellant was subject to a collective bargaining agreement between the union and the appellees. It is well settled in Ohio that the failure of an employee to exhaust his or her administrative remedies pursuant to a collective bargaining agreement will result in a determination that a court does not have jurisdiction to hear the employee's complaint. *Nemazee v. Mt. Sinai Med. Ctr.* (1990), 56 Ohio St.3d 109, 111, 564 N.E.2d 477. Stated another way, "a court of common pleas has no subject-matter jurisdiction over an employee's grievance if the employee failed to exhaust the grievance procedure * * * set forth in a labor contract." *Fraternal Order of Police, Ohio Labor Council, Inc. v. Springdale* (Feb. 5, 1997), Hamilton App. No. C–960151, 1997 WL 44372.

{¶ 37} There are two exceptions to the above rule. "First, if there is no administrative remedy available which can provide the relief sought, or if resort to administrative remedies would be wholly futile, exhaustion is not required." (Citation omitted.) *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 17, 526 N.E.2d 1350. Second, exhaustion of administrative remedies is also unnecessary when the available remedy is onerous or unusually expensive. Id.

{¶ 38} A plaintiff must first avail himself of the administrative remedies referred to prior to seeking judicial review. The purpose of the exhaustion doctrine is to afford the trial court with an adequate factual record upon which to make an informed decision and to promote judicial economy through the resolu-

tion of these disputes without the premature need for judicial intervention. See *Nemazee v. Mt. Sinai Med. Ctr.* (1990), 56 Ohio St.3d 109, 114, 564 N.E.2d 477.

{¶ 39} The fact that the appellant's claims stem directly from an interpretation of the collective bargaining agreement certainly would warrant an interpretation that the remedies afforded under the agreement be adhered to unless it would obviously prove futile. Accordingly, I am of the opinion that the trial court was correct in ruling that the appellant's claims where premature, since the appellant had failed to exhaust all administrative remedies prior to seeking satisfaction with the lower court. Simply, there is a strong public policy in favor of pursuing matters through arbitration, notably, in a situation arising from an interpretation of a collective bargaining agreement.