DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Ricardo Martinez, brings this accelerated appeal from a summary judgment issued by the Lucas County Court of Common Pleas in a defamation suit. Because we do not find that a genuine issue of material fact exists, we affirm.
 {¶ 2} The facts giving rise to this appeal are as follows. Appellee, WTVG-TV Channel 13, regularly broadcasts a nightly news program at 11:00 p.m. called Nightbeat. *Page 2 
During the February 24, 2005 edition of Nightbeat ¸ appellee reported the recent grand jury indictments of Misty Davis, Jeffrey Lauharn, and Ricardo Martinez for the rape of a 12-year-old girl. Along with the report, appellee displayed mug shots of all three of the indicted individuals, including a mug shot of Ricardo Martinez. The mug shot that appellee displayed, however, was not that of the recently indicted Ricardo Martinez, but instead was appellant's mug shot. While appellant and the recently indicted Ricardo Martinez share the same name, appellant was not indicted for rape, and appellant had never been indicted for a sexually-related offense.
 {¶ 3} Appellee obtained appellant's mug shot from the Lucas County Sheriffs Department following its general practice to obtain mug shots for news reports. On the afternoon of February 24, 2005, appellee's crime beat reporter, Erica Hurtt, informed the station's news director, Brian Tauring, that a grand jury had indicted Misty Davis and Jeffrey Lauharn on two counts of rape and Ricardo Martinez on two counts of rape and two counts of gross sexual imposition. The news director then instructed Matt Simansky, the producer of Nightbeat, to include the indictments in the news broadcast that evening, and to obtain mug shots to include with the report.
 {¶ 4} The producer delegated this task to the night assignment editor, Jennifer Dugan, who called the Lucas County Sheriffs Department to request the three mug shots. She asked for the mug shots by stating the name of each suspect and by mentioning the rape indictments. The officer interrupted her, stating that he knew the story and that the other stations were asking for the same mug shots. He told her he would have them on *Page 3 
the counter to pick up. One of appellee's photographers, Brian Sobolweski, picked up the mug shots, and the mug shots were used in that evening's broadcast.
 {¶ 5} One of the mug shots provided by the Lucas County Sheriffs Department was appellant's mug shot. No evidence was presented to the trial court to determine whether the Lucas County Sheriffs Department records of appellant were inaccurate and incorrectly identified appellant as the indicted Ricardo Martinez, or whether the officer that evening simply accessed the records of the wrong Ricardo Martinez to find the mug shot.
 {¶ 6} Immediately after seeing the news report, appellant called appellee. Jennifer Dugan, the night assignment editor, took appellant's call. Appellant told the night assignment editor that appellee had displayed the wrong mug shot in connection with the indictment. He demanded that the photo not be used again, and was told that he would be called back. The night assignment editor promptly informed theNightbeat producer, news director, and Diane Larson, managing editor and anchor. The managing editor sent an e-mail to the news director stating that she had been informed that the station had used the mug shot of the wrong Ricardo Martinez, and that they needed to double check to ensure they had the correct mug shot. Appellee did not return appellant's phone call.
 {¶ 7} Appellee's "Master Control" department automatically recorded and re-aired the 11:00 p.m. broadcast at 2:30 a.m. the next morning. Thus, appellant's mug shot was once again broadcast in connection with the grand jury indictments. Appellant's mug *Page 4 
shot was not used for the 8:00 a.m. news later that morning at the direction of the managing editor.
 {¶ 8} Appellant filed a suit against appellee in the Lucas County Court of Common Pleas, claiming two counts of defamation, one arising from each broadcast of the incorrect mug shot, negligence, and intentional infliction of emotional distress. Appellee filed an answer, and then filed a motion for summary judgment. In its brief, appellee argued that summary judgment was appropriate for the defamation causes of action because appellee was protected by a privilege in both R.C.2317.05 and the common law. Appellee argued that because the news report was a fair and impartial report of a grand jury proceeding gained from government sources, appellee's claim failed as a matter of law. Appellee further argued that if the underlying defamation claim failed, so too did the tort causes of action.
 {¶ 9} Appellant opposed appellee's motion, arguing that appellant was not entitled to the statutory privilege because the news report contained information extraneous to the grand jury proceedings, namely, the mug shot. Appellant also argued that the information was incorrect and therefore should not be protected by the privilege. Last, appellant argued that no common law "neutral reportage" privilege is recognized in Ohio, and thus appellee was not entitled to judgment as a matter of law on the defamation claims. Further, appellant argued that if the defamation claims still existed, so too should the negligence and intentional infliction of emotional distress claims. *Page 5 
 {¶ 10} The trial court granted appellee's motion for summary judgment, finding that appellee was protected under the "fair report" privilege codified in R.C. 2317.05. The court held that while appellee's news report was incorrect, the report was privileged because appellee gained its information from a government source. Further, appellee did not publish the report maliciously. Therefore, the court concluded, appellee could not be held liable for defamation. The court also held that "derivative tort claims for emotional distress cannot co-exist with a defamation claim."
 {¶ 11} Appellant now appeals, setting forth the following assignments of error:
 {¶ 12} 1. "The trial court erred in finding a mug shot of plaintiff-appellant added to the grand jury report of an indictment of a different Ricardo Martinez is within the `impartial report' privilege of 2317.05."
 {¶ 13} 2. "The trial court erred in not finding a jury question in whether defendant acted maliciously in the twice publication of the plaintiff-appellant's mug shot to incorrectly illustrate an individual charged with child rape."
 {¶ 14} 3. "The court below erred in not viewing the facts as nonprivledged [sic] slander and in not applying the standard of proof for non public figure slander of clear and convincing proof of negligence."
 {¶ 15} 4. "The court erred in dismissing appellant's intensional [sic] and reckless infliction of emotional distress claim in holding derivative tort claims cannot co-exist with a defamation claim." *Page 6 
 {¶ 16} On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated: "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 67, Civ.R. 56(C).
 {¶ 17} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); Riley v. Montgomery (1984),11 Ohio St.3d 75, 79. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel,Inc. (1999), 135 Ohio App.3d 301, 304; Needham v. Provident Bank (1996),110 Ohio App.3d 817, 826, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 248. *Page 7 
 {¶ 18} We first consider appellant's first and third assignments of error because they both concern privilege. In appellant's first assignment of error, he claims that the news report published by appellee is not protected by R.C. 2317.05, and in his third assignment, he claims that the news report was non-privileged slander. R.C. 2317.05
provides in part:
 {¶ 19} "The publication of a fair and impartial report of the return of any indictment, the issuing of any warrant, the arrest of any person accused of crime, or the filing of any affidavit, pleading, or other document in any criminal or civil cause in any court of competent jurisdiction, or of a fair and impartial report of the contents thereof, is privileged. * * *" Whether a publication falls under this privilege is a question of law. Worrell v. Multipress, Inc. (1989),45 Ohio St.3d 241, 248-49.
 {¶ 20} In order to claim the privilege in R.C. 2317.05, "the defendant must demonstrate that the publication is a substantially accurate report of the official record." Oney v. Allen (1988), 39 Ohio St.3d 103, paragraph two of the syllabus. A substantially accurate report "conveys the essence of the official record to the ordinary reader, without misleading the reader by the inclusion of inaccurate extra-record information or the exclusion of relevant information in the record." Id. at paragraph three of the syllabus.
 {¶ 21} In the Nightbeat broadcast, there were several reports of official records. First, appellee reported the return of a grand jury indictment. Appellee's statements concerning the grand jury indictment alone were substantially accurate, and substantially accurate reports of grand jury indictments are specifically privileged under R.C. 2317.05. *Page 8 
Second, appellee broadcast appellant's mug shot. The broadcast of the mug shot alone also falls under the privilege because it is part of appellant's arrest record, or "a fair and impartial report of * * * the arrest of any person accused of crime." R.C. 2317.05.
 {¶ 22} The issue in this case, however, is the publication of the mug shot in connection with the grand jury indictments. The grand jury did not indict appellant. Appellant's arrest record and the grand jury indictments are completely separate official records. Thus, appellee's broadcast of the records together was not a "substantially accurate report" of either of these official records because by including "extra-record information" it misled viewers into believing that appellant was recently indicted by a grand jury for rape. Therefore, in order to fall under the privilege in R.C. 2317.05, appellee's report must be based on some other official record.
 {¶ 23} The only other possible "official record" in this case is one that may have resulted from the conduct of the Lucas County Sheriffs Department officer. By providing appellee with appellant's mug shot in response to a specific request for the mug shots of those recently indicted by the grand jury for rape, the officer was making a representation that appellant's arrest record reflected that the grand jury had indicted him for rape. Whether this representation constitutes an "official record" of the grand jury proceeding under R.C. 2317.05 is central to appellant's first assignment of error.
 {¶ 24} The trial court found that "information reported by government officials" is protected under R.C. 2317.05. Appellant contends that not all information from a government source is protected by R.C. 2317.05. Appellant cites April v. Reflector- *Page 9 Herald, Inc. (1988), 46 Ohio App.3d 95, a Sixth Appellate District case, to support this contention. The appellant in that case, April, was an employee who had been terminated from a county's sheriffs department. Id. at 96. After her termination, April filed an age discrimination claim against the county, and the county sheriff negotiated a settlement with her. Id. The settlement was addressed in a county commissioner's meeting. Id. After the commissioner's meeting, the county sheriff told a reporter for the newspaper that April had been fired for stealing from the department. Id. April had not in fact stolen from the department. Id. Further, no such accusation was made during the commissioner's meeting. Id. at 97.
 {¶ 25} The newspaper published the sheriffs defamatory statement, and April sued the newspaper for defamation. Id. at 96-97. The court considered a privilege to defamation which protects the report of any defamatory statements made within legislative or judicial proceedings. Id. at 97. This privilege is codified at R.C. 2317.04. The court found that a report of a defamatory statement made outside of a proceeding was not protected by the privilege, even if the statement was made by a government official who was involved in the proceeding and the statement was about the events of the proceeding. Id.
 {¶ 26} The facts in April, however, are different from those in the case at bar. In April, the government official told reporters his version of one of the issues in the hearing. Id. at 96. His statements did not originate from a source protected by the privilege; just because they related to a proceeding did not make them part of a *Page 10 
proceeding. Id. at 97. In the case at bar, however, the officer merely accessed an arrest record, a record specifically protected by the privilege, without making any comment. It is true that the officer's representation that appellant was the recently indicted Ricardo Martinez was erroneous and that the representation inaccurately reflected appellant's arrest record. This error, however, resulted from his failure to access the correct record, and not from his failure to accurately describe the record.
 {¶ 27} Indeed, reports based on inaccurate official records are protected by the fair report privilege in R.C. 2317.05. Smitek v. LorainCty. Printing Publishing Co. (Oct. 11, 1995), 9th Dist. No. 94CA006023. In Smitek, a newspaper incorrectly reported that the appellant had violated several land use ordinances. Id. The newspaper based its reports on a press conference given by the mayor in which he stated that "the city would be issuing a number of citations against [appellant * * * for violations of land use ordinances." Id. The mayor had received incorrect information from the county auditor's office regarding the ownership of the property that was the subject of the citations; appellant's husband, and not appellant, was the owner of the property. Id. Due to the inaccuracy of the auditor's records, appellant was actually issued more than 60 citations, but these charges were later dropped. Id.
 {¶ 28} The court held, however, that the newspaper was privileged in reporting the incorrect charges, even after it had been put on notice that the charges may have been incorrect. Id. The court stated that the newspaper made "a fair report of what later was shown to be inaccurate information provided by government officials." Id. The court *Page 11 
emphasized that "the indiscriminate repetition of accusations at the mere say-so of any government official" was not protected, but in that case, "the error in the information provided was the result of recording errors." Id. The court held that the report was protected by the "fair report" privilege, codified in R.C. 2317.04 and 2317.05. Id.
 {¶ 29} If official records inaccurately maintained by government officials are protected by the privilege, then official records inaccurately accessed by government officials must also be protected by the privilege. The news media should be able to rely on government records to accurately reflect the facts, and should be protected from defamation if those records are wrong, as recognized by the court inSmitek. Id. Similarly, the news media should be able to rely upon those in charge of accessing official records to provide them with the correct requested records.
 {¶ 30} The purpose of the privilege in R.C. 2317.05 is to protect news media and others from defamation claims when making substantially accurate reports of information contained in official records. SeeYoung v. The Morning Journal (1996), 76 Ohio St.3d 627, 629. In cases in which the only reasonable way to access an official record is to request the record from a government official, the purpose of the privilege would be defeated if the actions of the government official in merely accessing the record are considered outside of the privilege. Therefore, we find that the actions of the Lucas County Sheriffs officer in accessing an arrest record are part of the privilege in R.C. 2317.05. *Page 12 
 {¶ 31} Because appellee had to rely upon a government official to access the arrest record of the recently indicted Ricardo Martinez, and appellee broadcasted a substantially accurate report of the record that was provided, we find that appellee's news report is protected by R.C.2317.05. Because we find the broadcast falls within the privilege in R.C. 2317.05, we find appellant's first and third assignments of error not well-taken.
 {¶ 32} Next, we turn to appellant's second assignment of error, which states that the trial court erred in finding that appellee did not act maliciously. Under R.C. 2317.05, once appellee's report has been found to fall within the privilege, appellant can defeat the privilege only if he establishes that the report "was published maliciously, or that [appellee] has refused or neglected to publish in the same manner in which the publication complained of appeared, a reasonable written explanation or contradiction thereof by the plaintiff, or that the publisher has refused, upon request of the plaintiff, to publish the subsequent determination of such suit or action."[1]
 {¶ 33} Thus, the fair report privilege in R.C. 2317.04 and 2317.05 is a qualified privilege to defamation. "In a qualified privilege case, `actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." Jackson v. Columbus, Ohio St.3d, 2008-Ohio-1041, ¶ 10, quotingJacobs v. Frank (1991), 60 Ohio St.3d 111, paragraph two of the syllabus. "The phrase `reckless disregard' applies when a publisher of defamatory statements acts with a *Page 13 
high degree of awareness of their probable falsity, or when the publisher in fact entertained serious doubts as to the truth of his publication." Id. (internal citations removed).
 {¶ 34} Appellant argues that because appellee did not make an effort to verify that the mug shot that it received from the Lucas County Sheriffs Department was the correct mug shot, appellee acted with reckless disregard of the truth. Appellant further points out that the name Ricardo Martinez is a common name within the Hispanic community, and that the indictment contained serious charges. Thus, appellant argues that appellee acted in reckless disregard of the truth by not investigating the identity of the person pictured in the mug shot.
 {¶ 35} We find appellant's argument unpersuasive. Appellee did not act with reckless disregard to the truth by relying on the accuracy of an official record requested from the Sheriffs Department, the government body charged with maintaining arrest records. To find that the news media acts with reckless disregard by relying on the accuracy of official records provided to them would effectively defeat the privilege in R.C. 2317.05. Therefore, we find that appellee did not act maliciously in the first broadcast of appellant's mug shot.
 {¶ 36} With regard to the re-airing of the broadcast at 2:30 a.m. the following morning, appellant argues that appellee acted with reckless disregard to the truth because appellant had given appellee notice that the mug shot was incorrect prior to the re-airing. Appellant supports his argument by pointing out that after appellant called the station, *Page 14 
appellee's managing editor recognized that they needed to "double check" whether appellee had the correct mug shot.
 {¶ 37} As of the early morning hours of February 25, 2005, appellee had only two conflicting pieces of evidence. On the one hand, appellee had a mug shot provided by the Lucas County Sheriffs Department as the mug shot of the recently indicted Ricardo Martinez. On the other hand, appellee had received an 11:45 p.m. phone call from a caller who claimed to be Ricardo Martinez and who demanded to have the mug shot removed from the program. With the advantage of hindsight, we know that the Lucas County Sheriffs Department was wrong, and that the caller was actually the Ricardo Martinez pictured in the mug shot.
 {¶ 38} We cannot, however, find that appellee acted with reckless disregard of the truth by relying on the accuracy of an official record provided by the Sheriffs Department over the statements of a caller in the middle of the night, and by allowing the news program to be re-aired as usual. Indeed, in Smitek, the court found that the newspaper was privileged in re-publishing inaccurate information that resulted from recording errors in official governments, even after it had been put on notice that the information was incorrect. Smitek v. Lorain Cty.Printing Publishing Co. (Oct. 11, 1995), 9th Dist. No. 94CA006023. Accordingly, we find that appellee did not act with actual malice in the second broadcast, and appellant's second assignment of error is not well-taken. *Page 15 
 {¶ 39} In his fourth assignment of error, appellant states that the trial court erred in dismissing appellant's intentional tort claims. The trial court found that "derivative tort claims for emotional distress cannot co-exist with a defamation claim."
 {¶ 40} Ohio courts have recognized on numerous occasions that when a tort claim is based on privileged speech, the tort claim must fail.See, e.g., A B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. Constr. (1995), 73 Ohio St.3d 1, 15 (holding that "where claims such as tortious interference and disparagement are based on statements that are qualifiedly privileged under defamation law, the protection afforded those statements * * * must also apply in the derivative claims.");Vail v. The Plain Dealer Publishing Co. (1995), 72 Ohio St.3d 279, 283
(holding that because "the statements at issue are constitutionally protected speech, [the]claims for intentional infliction of emotional distress must also fail"). Here, appellant's claim for intentional infliction of intentional distress is based on appellee's news report. Because we hold that this report is privileged under R.C. 2317.05, we find that appellant's intentional infliction of emotional distress claim must fail. Accordingly, we find appellant's fourth assignment of error not well-taken.
 {¶ 41} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED. *Page 16 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Arlene Singer, J., William J. Skow, J. CONCUR.
[1] Appellant does not argue in his appeal that appellee refused to publish his "reasonable written explanation or contradiction * * * or * * * the subsequent determination of such suit or action." R.C.2317.05. *Page 1